## No. 2343.

## BELLE GOODE ET AL. *v.* VIRGINIA LOWERY ET AL.

**1. TRIAL — CONCLUSIONS OF LAW AND OF FACT.**— When the trial judge to whom a cause is submitted reduces his conclusions of fact and law to writing, his failure to find a particular issue claimed by counsel to be material is not error unless, from an inspection of the record, it should appear to the Supreme Court material that a finding should have been had on it.

**2. EXECUTORY CONTRACT—LIMITATION.**—Though the lapse of ten years after the date of an executo y contract will, as a general rule, bar an, action for its enforcement, this rule will not apply as against a vendee in possession under it, when he has complied with his part of the contract.

**3. LAND CERTIFICATE—DESCENT AND DISTRIBUTION—STALE DEMAND.**— S. immigrated to Texas in 1836, and afterwards married and received a land certificate for one league and labor, one-third being granted to him individually and two-thirds being an augmentation resulting from. his marriage. In 1838 the husband and wife conveyed the entire certificate to B., authorizing to be located in B.'s name, in trust, that B. should, when patent issued, transfer the two-thirds to the wife of S. A divorce was granted S. in 1850, and by that marriage he had children. The certificate was established in 1846 as genuine, and S., after swearing that he had never transferred it, and that it was lost, obtained a, duplicate, which he caused to be located, and obtained a patent thereon. in 1850. B. died in 1867 and S. in 1883, the latter having delivered before his death the patent to the children of the first marriage. No possession was taken until 1883. The children of the second marriage sue for the land. *Held:*

(1) No presumption can arise from the facts stated and from the further fact that land certificates are personal property, and may be transferred by delivery, that B. sold and re-transferred the certificate to S.

(2) The legal and equitable title to the certificate was vested in B. by the deed from S. and wife. The fact that the government issued patent.

for the entire league and labor, including the augmentation, to S. instead of B., as was intended, did not affect the status of the two-thirds conveyed by deed in trust, and neither S. nor his heirs could acquire title to it without first repudiating the trust.

(3) A conveyance of part of the land to a stranger by S. before his death operated as a repudiation of the trust only *pro tanto.*

(4) For the reasons given in the opinion, the doctrine of stale demand has no application.

(5) The children of the second marriage inherited no interest in the two-thirds of the land.

(6) After receiving the duplicate certificate S. had no authority to convey the land secured to the children of the first marriage in consideration of the location of the certificate. either from the fact that he was tenant in common or because he held B.'s portion of the certificate in trust for him.

APPEAL from Colorado. Tried below before the Hon. George McCormick.

This suit was filed in the district court of Colorado county on the seventeenth day of April, 1885, by appellant. The petition alleged that the appellants and one of the defendants, Virginia Lowery, were the heirs and children of W. B. Scates, deceased, who married twice in life, they being children of his second marriage; that J. R. Scates and Sarah E. Hill were his heirs and children by his first marriage; that W. B. Scates died intestate, in Colorado county in 1883, seized and possessed of two thousand one hundred and eighty-eight acres of land in Kinney county, Texas; that his last wife died previous to his decease, and that all his heirs, both by his first and second marriage were joint owners of said land by inheritance; that J. R. Scates and his sister, Sarah E. Hill, on the seventh day of August, 1883, sold and conveyed their interest in the land to the defendants, W. S. Clamp, C. C. Clamp and W. W. Arnett, closing with a prayer for partition as the interest of each might appear. Defendants set up, after a plea to the jurisdiction of the court, a general demurrer and plea of not guilty; that the W. B. Scates who was grantee of the land in controversy, was a single man and citizen of Texas at the date of the declaration of Texas Independence, and as such was entitled by virtue of the tenth section of the general provisions of the Constitution of the Republic of Texas, to one-third of a league of land; that in November, 1836, he married Theodocia C. Smith, and thereby became, under the provisions of the twenty-third section of the

act of Congress of Texas, of December 14, 1837, entitled to an augmentation of two-thirds of a league and one labor of land; that of the marriage between W. B. and Theodocia C. Scates, were born J. R. Scates and Sarah E. Hill; that on the tenth of January, 1838, W. B. and Theodocia Scates conveyed by deed to W. P. Smith the said augmentation certificate for two-thirds of a league and one labor; that Theodocia was the daughter of said W. P. Smith, and that he conveyed said augmentation to said Theodocia; that the land in controversy was located and patented by virtue of a certificate issued in lieu of said one-third league certificate and the said augmentation certificate; that W. B. and Theodocia were legally divorced; that after the divorce W. B. Scates conveyed to one DeCordova more than his interest in said land; that J. R. Scates and Sarah E. Hill were sole heirs of both W. B. Smith and Theodocia, both of whom were dead; and that they had conveyed the land by deed to defendants. Defendants, Clamp & Clamp, on the second day of March, 1886, answered with a general demurrer, general denial, plea of not guilty, stale demand and claiming to have been purchasers of J. R. Scates and Sarah E. Hill of the entire tract of land in controversy in good faith and for a valuable consideration; that Arnett had joined them in said purchase but they had since purchased his interest in the land; that J. R. Scates and Sarah E. Hill were the only heirs of their grand father, W. P. Smith, who was the owner of the augmentation to said W. B. Scates's headright certificate for a league and labor of land, said augmentation being for two-thirds of a league and labor, having purchased the same from Scates in his lifetime; that the land in suit was a portion of land located by virtue of said headright certificate, further alleging that W. B. Scates, by deed of conveyance dated September 30, 1850, disposed of as much as his remaining interest in this land to one DeCordova. The defendants prayed judgment for valuable improvements should plaintiff and defendant Virginia Lowery recover part of the land. Plaintiff by supplemental petition filed March 2, 1886, charged that the transfer from W. B. Scates and wife to W. P. Smith, dated January 10, 1838, if any title was ever intended to be passed thereby, was a sale of personal property and suceptible of sale orally, and was sold by said Smith to said Scates long before the location; further charging that any improvements made by defendants, Clamp & Clamp, on the land were not made in good faith, and that their claim

to the augmentation by virtue of the transfer from Scates and
wife to Smith, dated January 18, 1838, was stale and long since
barred. The case was submitted to the court without a jury
and judgment was rendered for said defendants, Clamp &
Clamp.

*Kennon & Townsend* and *Foard & Thompson*, for appellants:
The court erred in not holding under the law and facts of this
case that the defendants who recovered and those under whom
they claim were estopped from setting up any claim to the
whole of any part of the land in controversy by virtue of said
deed from said Scates and wife to Smith, dated January 10,
1838. (Scoby v. Sweatt, 28 Texas, 713.)

An equitable title must be asserted within a reasonable time,
when the owner of the legal title is openly, notoriously and
adversely asserting his ownership, control and possession.
(Story's Equity Jurisprudence, paragraph 1520 and notes; Glass-
cock v. Nelson, 26 Texas, 152, and authorities cited therein;
Fleming v. Reed, 37 Texas, 152; Parker v. Spencer, 61 Texas,
165.

When one receives and accepts the benefits and advantages
arising from another's acts he thereby ratifies and confirms
such actions, and will be estopped from repudiating the same.
(Doss v. Slaughter, 53 Texas, 237; Reed v. West, 47 Texas, 240.)

*Brown & Dunn,* for appellees.

MALTBIE, PRESIDING JUDGE. W. B. Scates immigrated to
Texas as a single man in 1832, and settled in Washington
county. In November, 1836, he was married to Theodocia C.
Smith, and on or about the tenth of January, 1838, he was
awarded a headright land certificate for a league and labor,
one-third being granted to him individually as a single man,
and two-thirds being an augmentation in consideration of his
marriage. On the tenth day of January, 1838, Scates and his
wife, by their deed in writing, for the recited consideration of
nine hundred dollars paid, transferred to W. P. Smith their
augmentation headright, and authorized it to be located in
Smith's name, and on the same day Scates and wife executed
a power of attorney to Smith, authorizing him to locate the
certificate, and have it patented to himself. On thirtieth day
of March, 1838, Smith executed a writing by which he agreed to

convey the two thirds of the league of land, when patent should be obtained by virtue of the certificate transferred to him by Scates and wife, to Mrs. Theodocia Scates, or devise it to her by will. Scates and wife lived together until 1850, when they were divorced. There was born of that marriage J. R. Scates and Mrs. Hill, who were the sole heirs of Mrs. Theodocia Scates, and also of W. P. Smith, who was their grandfather. W. B. Scates, soon after he was divorced, married the second time, and there were children born of this marriage also, who are the plaintiffs in this suit.

The headright certificate of W. B. Scates, which was issued for a league and labor, presumably to include his headright as a single man and the augmentation to which he and his wife were entitled, was rejected by the traveling board to detect fraudulent land certificates, and he instituted suit in the district court of Washington county, in 1846, to establish it as genuine, and a decree was rendered in his favor to that effect. Afterwards the certificate was lost, and Scates made affidavit that it was his property and that he had never sold or in any manner transferred it, and obtained a duplicate from the Commissioner of the Land Office. This certificate was located by DeCordova on land in Kinney county, and a patent issued to W. B. Scates to the land in 1850. Scates in that year conveyed to DeCordova two thousand two hundred and forty acres of it, in consideration of his services for locating this certificate and another in the name of Evans, leaving of the Scates survey two thousand one hundred and eighty eight acres.

W. P. Smith died in 1867, and W. B. Scates in 1883. In 1872 W. B. Scates delivered the patent to the land in controversy to his son, J. R. Scates, who testified that he had paid taxes on it and claimed it for himself and Mrs. Hill ever since. There was no evidence that W. B. Scates had ever paid taxes on the land, and it was not in the possession of any one until 1883. During that year A. R. Scates and Mrs. Hill sold and conveyed to Clamp & Clamp, who fenced and built houses upon it and have been in actual possession since that time. The plaintiffs Belle Goode et al., children of W. B. Scates by his second wife, brought this suit for a partition of the unsold portion of the W. B. Scates league, which was tried by the court without a jury and judgment rendered for defendants.

The first complaint is that the court erred in not finding and reducing to writing its conclusions of law and fact on the ma-

terial issues raised by the pleadings of the parties, when plaintiff at the time requested the court to do so. It appears from the record that the court did reduce to writing its conclusions of fact and of law, and that counsel afterwards requested more specific findings in reference to the questions of estoppel and of stale demand; and that the court, in response, stated substantially that in its opinion the questions had been as fully answered as the evidence would authorize.

In such event, the district court is the primary judge as to what is material and what facts the evidence tends to prove, as well as the conclusions of law and fact to be drawn therefrom. Article 1333 of the Revised Statutes provides that, upon a trial by the court, the judge shall, at the request of either of the parties, state in writing the conclusions of fact found by him, separately from the conclusions of law, which conclusions of fact and law shall be filed with the clerk and shall constitute a part of the record.

The court made out and filed a statement of facts in the case according to law, which must be presumed to be correct; and, if there was an omission to find any conclusions of fact or law to the prejudice of the plaintiffs, it can be revised in this court. But, where the court reduces its conclusions of fact and law to writing, a failure to find a particular issue claimed by counsel to be material is not error, unless it is made by the evidence to appear material to the court. It does not appear from the record that W. B. Scates was influenced by the words or conduct of defendants, or those under whom they claim, to bring suit to establish his head right certificate, or to make affidavit after its loss that it was his own property, and that he had not sold or transferred it, or to contract with De Cordova for its location and convey him a portion of it; nor change his condition in reference to the land certificate or the land in any way whatever. Nor can it be presumed from these facts, or the failure of defendant to prove that either W. P. Smith or Theodocia C. Scates objected to the action of W. B. Scates in the premises; and therefore defendants are not estopped to assert any title they may have to the land. Nor can a court presume, from the facts herein stated, and from the further fact that land certificates are personal property and may be transferred by delivery, that W. P. Smith sold or conveyed the certificate to W. B. Scates.

It is insisted that the conveyance from W. B. Scates and wife to W. P. Smith, of date January 10, 1838, has become a stale demand, and that it is not available to defendants as a muniment of title; upon the theory that though in form a deed, it is in fact an executory contract. The lapse of ten years or more after the time when suit should be brought is now generally conceded to be a good defense to actions on executory contracts, when no sufficient excuse is given for the delay in bringing suit, but it does not follow that the person holding the legal title under such circumstances could recover as against a defendant in possession under an executory contract, and we think the contrary may be safely asserted as the rule in all instances where the vendee has complied with his part of the contract.

The legal and equitable title to two-thirds of the certificate was vested in Smith by deed from Scates and wife, with direcions that the patent issue to same in the name of Smith. But for some reason the officers of the government issued the original headright to W. B. Scates, and the augmentation of himself and wife as a single certificate, instead of one certificate for one-third, and another for two-thirds, as seems to have been contemplated would be done. A certificate having been issued to W. B. Scates for a league of land, upon its location the patent was issued to him for the whole league, but two-thirds of it was in trust for W. P. Smith, and neither Scates nor his heirs could acquire title to it without first repudiating the trust.

We are of opinion that the facts shown, even if known to Smith, can not be considered such repudiation. The land was intended ultimately for the benefit of Scates's wife, and all of his acts except the conveyance to DeCordova, was in furtherance of the trust, and this should not be held to operate as a repudiation of it, except as to the land conveyed, especially as it is susceptible of explanation if the parties to it were in life. For these reasons, we do not think the doctrine of stale demand is applicable to the facts of this case. It has not been shown that appellants' ancestor had the right to convey any land in the league, except his one-third interest, and it appearing that he did convey more than this, it follows there was nothing left for appellants to inherit, and they can not recover. W. B. Scates had no implied authority to bargain or convey appellees' land in consideration of the location of the certificate, either

from the fact that he was tenant in common, or from the fact that he held Smith's portion of the certificate in trust for him, and no express authority is shown. The judgment should be affirmed.

*Affirmed.*

Opinion adopted February 28, 1888.