## MOISE BROUSSARD v. A. J. AND J. J. DULL.

### No. 83.

**1. Pleading — Equitable Title in Defense.** — Action of trespass to try title. Defendants answered, in substance, that the original grantee of the land, prior to its location, had sold and conveyed one-half interest in the land sued for to C., and that defendants by purchase from the heirs of C. held his interest in the land. *Held*, that under this answer it was competent to read a conveyance for half the land to be located under the certificate, to be located by C., and to prove that C. had located the land and procured patent. Such facts showed an equitable title.

**2. Certificate to Proof of Deed for Record.** — The caption of a deed read: "Republic of Texas, County and Town of Jasper." To the deed was an-nexed a certificate as follows: "This day personally appeared before me, at my office, Gideon J. Goode, one of the witnesses to the within deed, who being by me duly sworn, upon his oath says, that John M. Taylor and Nancy N. Taylor, his wife, assigned the above deed in his presence, the said Goode. Given under my hand, at Jasper, this 10th day of November, 1838. [Signed] A. G. Parker, Co. Recorder." The impress of the seal contained the words: "Jasper County Court." *Held*, that the certificate was sufficient. The property was community property.

**3. McMullen County—Record of Deeds.** — It seems that the registry of a deed was legal in San Patricio County, June 16, 1859, for land in McMullen County, not then organized or attached to an organized county, but which form-erly had been included in San Patricio County.

**4. Equitable Title — Stale Demand.** — The purchaser of an interest in land to be by him located, having located the land and paid the consideration, entered into possession in 1883, within less than ten years from the first act of repudiation by the holder of the legal title, *held*, that the doctrine of stale demand has no application, and can not defeat the superior equity of such purchaser.

ERROR from McMullen.    Tried below before Hon. D. P. MARR.

*O'Brien & O'Brien*, for plaintiff in error.—1. Said instrument had not been legally and sufficiently authenticated for record.    [See opinion.] Stat. Dec. 20, 1836, Pasch. Dig., art. 832; Craddock v. Merrill, 2 Texas, 494; Whitehead v. Foley, 28 Texas, 288; Coffey v. Hendricks, 66 Texas, 678; McKellar v. Peck, 39 Texas, 381; Ballard v. Perry, 28 Texas, 347.

2. At the time of the accrual of the right and title of plaintiff and those under whom he claimed said lands, said deed had not been duly recorded in any proper county, and plaintiff, or those under whom he claims, had no notice thereof.    See Live Oak County, Pasch. Dig., art. 368; McMullen County, Pasch. Dig., art. 377; Lumpkin v. Muncey, 66 Texas, 311; Hawley v. Bullock, 29 Texas, 221; Guilbeau v. Mays, 15 Texas, 415; Lewis v. Johnson, 68 Texas, 448; Grace v. Wade, 45 Texas, 522; Ayres v. Duprey, 27 Texas, 593; Linn v. Le Compte, 47 Texas, 441; Fish v. Ravensaes, 32 Ala., 45; Bremer v. Case & Deffenbaugh, 60 Texas, 152; Adams v. Hayden, 60 Texas, 223; Jones v. Powers, 65 Texas, 214.

3. Evidence to prove specific performance of executory contract to locate lands for an interest therein, was not responsive to or in support of defendants' special answer and defense, wherein they specially deraigned a legal title to one-half of said survey, and was inadmissible. Railway v. Whitaker, 68 Texas, 630; Rivers v. Foote, 11 Texas, 662; Wilson v. Simpson, 68 Texas, 313.

4. The claim asserted by defendants was a stale demand.    McFaddin v. Williams, 58 Texas, 625; Flemming v. Reed, 37 Texas, 152; Glasscock v. Nelson, 26 Texas, 150; Smith v. Hampton, 13 Texas, 462; Johnson v. Newman, 43 Texas, 628; Wilson v. Simpson, 68 Texas, 308; De Cordova v. Smith, 9 Texas, 147; Bremer v. Case & Deffenbaugh, 60 Texas, 153; Murphy v. Welder, 58 Texas, 236; Lewis v. Cole, 60 Texas, 341.

*Lane & Mayfield*, for defendants in error.—1. The deed from Taylor to Criswell was legally authenticated for record.    McDonald v. Morgan, 27 Texas, 504; Rev. Stats., art. 4356.

2. The deed was properly recorded in San Patricio County; and Moise Broussard, plaintiff below, was charged with notice of this record, and therefore can not be protected as an innocent purchaser.    Decree No. 283, Pasch. Dig., art. 400; San Patricio County, Id., art. 400; Nueces County, Id., art. 386; Live Oak County, Id., art. 368; McMullen County, Id., art.

377; O'Shea v. Twohig, 9 Texas, 336; Clark v. Goss, 12 Texas, 396; McKissick v. Colquhoun, 18 Texas, 148; Lumpkin v. Muncey, 66 Texas, 311.

3. Taylor having conveyed an undivided half of this land to Criswell by deed of general warranty, upon the issuance of the patent in the name of Taylor, the legal title of an undivided half passed by estoppel to Criswell. Johnson v. Newman, 43 Texas, 642; Satterwhite v. Rosser, 61 Texas, 166; Burkett v. Scarborough, 59 Texas, 498; May v. Lewis, 4 Texas, 38; Wheat v. Owens, 15 Texas, 241; Lindsay v. Jaffray, 55 Texas, 626; Box v. Lawrence, 14 Texas, 545; Walters v. Jewett, 28 Texas, 200.

4. The legal title to an undivided half of said survey being in Criswell, the same was not subject to the plea of stale demand. Murphy v. Welder, 58 Texas, 235; Satterwhite v. Rosser, 61 Texas, 172; Williams v. Conger, 49 Texas, 583; Telfener v. Dillard, 70 Texas, 141.

5. The plaintiff in error, through his entire brief, assumes in every form and upon almost every proposition, that the defendants below rested their defense upon a special plea other than that of not guilty and the statutes of three and five years limitation; or rather assumes that the defendants, by their plea of the statute of three and five years limitation, waived their defense under the plea of not guilty; and we do not propose to follow him any further in his manner of presenting this case. Holman v. Criswell, 15 Texas, 394; Early v. Sterrett, 18 Texas, 117; Glasscock v. Nelson, 26 Texas, 150; Yeary v. Cummins, 28 Texas, 95; Taylor v. Rowland, 26 Texas, 293.

6. Stale demand does not apply to a defendant in possession under an executory contract, where he has fully complied with his contract. In a suit of trespass to try title, the plea of stale demand is a defensive weapon, not offensive, made so by statute. Rev. Stats., art. 3209.

KEY, ASSOCIATE JUSTICE.—On behalf of the plaintiff, we find from the evidence in the record as follows:

1. The land in controversy was patented by the State of Texas to John M. Taylor, January 23, 1847, and is described in the patent as it is in the plaintiff's petition, except that it is stated in the patent that the land is situated in San Patricio Land District instead of in McMullen County, as alleged in the petition.

2. Plaintiff read in evidence a judgment rendered by the District Court of Orange County, April 6, 1872, in cause number 311, State of Texas v. Susan F. Brazee and sureties, and J. M. Taylor as principal and Jacques Nogues and others as sureties, wherein the State of Texas recovered judgment against J. Mc. Taylor as principal and Jacques Nogues as surety on said J. Mc. Taylor's bond as administrator of the estate of Constance L. Perue, deceased, and of M. A. Hewson and D. C. Hewson, heirs at law of William Hewson, who was also surety on said bond, for the sum of $614.25.

3. Execution issued on said judgment May 6, 1872, directed to the

sheriff or any constable of Orange County, which was satisfied by the said Nogues and Hewsons paying to the sheriff of said county the amount of the judgment.

4. At the instance of Jacques Nogues, a pluries execution was issued on said judgment August 17, 1874, directed to the sheriff or any con-- stable of McMullen County, and was placed in the hands of Alex. Coker, sheriff of Live Oak County, who, by virtue of said execution, made a levy on the land in controversy November 4, 1874; there was no further exe-- cution of this writ for want of time.

5. November 20, 1874, a venditioni exponas was issued on said judg- ment, directed to the sheriff or any constable of McMullen County, re- citing the issuance and levy of the pluries execution aforesaid, and or- dering the sheriff of McMullen County (without naming any person) to proceed and sell the land in controversy as provided by law. This and the other process before mentioned was issued by the district clerk of Orange County, and was in due form.

6. Said order of sale was executed by said Alex. Coker, and the land in controversy sold by him in the manner provided by law for sheriffs' sales of real estate, on the first Tuesday in February, 1875, at which sale said Jacques Nogues became the purchaser for the sum of $425, the same being less than the amount he paid in satisfaction of the aforesaid judg- ment; and the amount of his bid was credited on the execution. And said Alex. Coker, as sheriff of Live Oak County, executed and delivered to said Jacques Nogues a deed for said land, in the usual form of deeds made by sheriffs when lands are sold under execution; which deed is dated February 2, 1875, and was duly recorded in Live Oak County March 17, 1875, and in McMullen County April 12, 1881.

7. April 26, 1876, Jacques Nogues conveyed the land in controversy to Sevenne and Moise Broussard. This conveyance was by warranty deed, and was duly recorded in Live Oak County April 4, 1877, and in McMullen County April 7, 1879.

8. It was shown that Sevenne Broussard was dead, and that his sur- viving wife, Belzire Broussard, had qualified, as authorized by chapter 28, of title 37, of the Revised Statutes of this State, to control and dis- pose of community property of herself and her deceased husband; and that her and her husband's interest in the land in question was commu- nity property between them; and that on the 14th day of February, 1881, by warranty deed in due form, she conveyed the interest of herself and her said husband in said land to the plaintiff Moise Broussard, which deed was duly recorded in McMullen County July 12, 1881.

9. It was shown that the plaintiff and his brother, Sevenne Broussard, knew nothing of the claim of the defendants or those under whom they claim to any part of the land in controversy before or at the time said Broussards purchased the same from Jacques Nogues. The consideration

of their purchase of the land was as follows: In 1874, they loaned said Nogues $400 with which to pay the judgment herein before referred to, against J. Mc. Taylor as principal and Nogues and others as sureties, for which said Nogues issued his promissory note and a mortgage on certain property in the town of Orange, and when the Broussards purchased from him this land, they surrendered his note and released the mortgage on his property, and paid him in cash $153.

10. It was shown that J. Mc. Taylor and John M. Taylor were one and the same person.

11. Plaintiff introduced in evidence his map contained in the record, and marked and filed for him March 26, 1889, showing that the land in controversy is in McMullen County.

12. In 1882 plaintiff leased the land to a tenant who occupied an adjoining survey. This lease expired April 1, 1885; but the tenant never took possession under the lease, and it was not shown that plaintiff or those under whom he claims ever had actual possession of the land.

On behalf of the defendants, we find from the evidence in the record as follows:

1. Defendants read in evidence the following instrument of writing: "*Republic of Texas, County and Town of Jasper.*—Know all men by these presents, that I, John Mc. Taylor, of the county of Jasper and Republic of Texas, for and in consideration of the sum of $450 to me in hand paid, the receipt whereof is hereby acknowledged, and the selecting, having surveyed, and paying all government fees on the balance of my headright, which is three-fourths of a league and one labor, which is 3498 acres, agreeable to my certificate granted me by the Board of Land Commissioners of Jasper County, number 133, and dated the 4th August, A. D. 1838, to be located, selected, and surveyed at the expense of Joseph Criswell, of the county and Republic aforesaid, for which said consideration above mentioned I, the aforesaid John Mc. Taylor, have bargained, sold, transferred, and conveyed, and do by these presents bargain, sell, transfer, and convey unto Joseph Criswell, his heirs and assigns, the one-half of the above 3498 acres of land, or 1749 acres of land: To have and to hold the aforesaid premises, and all the appertainances thereunto belonging, unto the said J. Criswell, his heirs and assigns, forever. I, the aforesaid John Mc. Taylor, hereby dispossess myself, my heirs, executors, and administrators, from this day forward, all my or their wright, title, and interest of, in, and to the mentioned 1749 acres of land, which is to be the second choice, after it is fairly and equally divided according to quantity and quality, to be more fully described when a patent is obtained from this government. And I, the said John Mc. Taylor, my heirs and executors, will warrant and defend the same to the said J. Criswell, his heirs and assigns, forever, against the lawful claims and demands of all persons whatsoever; I hereby granting to the said Joseph Criswell full

power to select, locate, and have surveyed, and to receive the patent from the officers of government in my name for the above quantity of land; and generally to say, to do all matters and things that he, my said attorney, may deem necessary for the obtaining a good selection and a patent to the quantity of land which said certificate calls for; and further, I, the said John Mc. Taylor, for myself, my heirs, and executors, do hereby waive all matter of form and renounce all laws or parts of laws that may or can affect the validity of this instrument of writing contrary to the true intent and meaning thereof.

" In testimony whereof, I, the said John Mc. Taylor, together with Ann, my wife, who hereby relinquishes her right of dower to the said premises, have set our hands and seals, this the 18th day of October, 1838.

" JOHN MC. TAYLOR,

" NANCY ANN TAYLOR.

"Attest:

" GIDION J. GOODE,

" SAML. GOODE.

" This day personally appeared before me at my office, Gidion J. Goode, one of witness to the within deed, who being by me duly sworn, upon his oath says, that John M. Taylor and Nancy Ann Taylor, his wife, assigned the above deed in his presence, the said Goode.

" Given under my hand, at Jasper, this 10th day of November, 1838.

"A. G. PARKER, County Recorder."

Seal:  "Jasper County Court."

2. Written certificates attached to said instrument, executed in due form and by the proper officers, show that said instrument was recorded in San Patricio County on the 16th day of June, 1859, and in McMullen County on the 7th day of July, 1882.

3. It was shown that the land in controversy was located and surveyed by virtue of the headright certificate issued by the Board of Land Commissioners for the county of Jasper to said John M. Taylor for one league and labor of land, and numbered 133; that Joseph Criswell caused said land to be so located and surveyed at his expense, and paid the government fees due thereon.

4. Said location and survey were made April 8, 1839, and the government fees were paid December 30, 1840.

5. At the time the land was located, it was situated in San Patricio County. Live Oak County was created February 2, 1856, out of part of the territory of San Patricio County, and the creation of Live Oak County severed San Patricio in two parts, with Live Oak County intervening between the two parts, leaving a small area of territory between the western boundary line of Live Oak County and the eastern boundary line of Bexar County, as defined in an Act of May 24, 1838, and re-en-

acted April 18, 1846.   McMullen County was created February 1, 1858, and its boundaries include the land in controversy.   On the 8th day of December, 1857, an act was passed defining the boundaries of San Patricio County, and as thus defined the strip of land, including the land in controversy, separated from the main body of the county by the creation of Live Oak County, was not a part of San Patricio County.  From this time until the creation of McMullen County, in 1858, this small strip of territory remained as "no man's land."

6. It was shown that John Mc. Taylor, or J. M. Taylor, as he was generally called, died March 14, 1887, and that he had repeatedly during his lifetime stated that Joseph Criswell located the land in controversy and owned an interest therein for locating the same; that he recognized Criswell's locative interest in the land, and never disputed it up to the time of his death.

7. Joseph Criswell died in 1855, and the defendants, A. J. and J. J. Dull, claim under his heirs an undivided half-interest in the land in controversy, which undivided half-interest the said heirs have by warranty deed conveyed to said defendants; which deed is dated July 7, 1882, and on same day duly recorded in McMullen County.

8. It was shown that said defendants finished enclosing said land in a large pasture about the 1st of June, 1883, and have had the same in actual possession, use, and enjoyment from that time up to the time of trial, and that they and those under whom they claim have paid taxes on the land for the years 1847, 1849, 1851, 1856, 1859, 1860, 1861, 1862, 1865, 1866, 1867, 1868, 1869, 1870, 1871, 1873, 1875, and 1880; and that Joseph Criswell claimed a half-interest in the land to the time of his death.

This suit was instituted February 29, 1888, by plaintiff in error against A. J. and J. J. Dull, defendants in error, for the recovery of the title and possession of three-fourths of a league and labor of land in McMullen County, originally granted by the State of Texas to John M. Taylor.

The defendants pleaded not guilty, three and five years limitation, and pleaded specially title from the original grantee to one Joseph Criswell, and from Criswell's heirs to them, to a half-interest in the land sued for, and disclaimed as to the other half-interest. This latter plea is connected with and to some extent explanatory of the pleas of limitation.

In response to the answer of defendants, plaintiff averred, that he and those under whom he claimed acquired the land from J. M. Taylor without notice of the defendants' rights, and were innocent purchasers. Also, that if defendants or those under whom they claim ever had any right or title to the land, the same was barred by the statute of limitations and was a stale demand.

The cause was tried before a jury, and a verdict and judgment rendered awarding to the plaintiff an undivided half-interest, and to the defendants a like interest.

1. It is contended by the plaintiff, that the conveyance from John M. Taylor to Joseph Criswell, dated October 18, 1838, and the evidence offered to show performance on the part of Criswell of the obligations imposed by said instrument on him, were not admissible under the defendants' answer; the contention being, that defendants pleaded specially a legal title, and that therefore testimony tending to show an equitable title in Criswell, and from his heirs to defendants, was not admissible.

The rule of law contended for by plaintiff is well settled; but we do not agree with him in the construction placed on the defendants' answer. The answer did not specifically set up a legal title. It averred, that for a valuable consideration Taylor, on the 18th day of October, 1838, sold and conveyed by deed a one-half interest in the land sued for to Joseph Criswell, and that defendants, by purchase from the heirs of Criswell, held his interest therein. The conveyance from Taylor to Criswell was in the form of a deed, and conveyed an undivided half-interest in the land thereafter to be located by virtue of Taylor's land certificate, number 133, granted to him by the Board of Land Commissioners of Jasper County, August 4, 1838. It recited a consideration of $450 in hand paid, and the obligation upon the part of Criswell to have the certificate located and pay the government fees thereon. · It warranted the title to the one-half interest in the land so conveyed to Criswell. The land sued for is the land referred to in this instrument.

Considering all the terms of the instrument, and the fact that it shows that a considerable part of the consideration had already been paid, it is not clear that, unaided by proof that Criswell located and paid the fees on the land, it did not, when the land was patented to Taylor, vest in Criswell at least an equitable title. At any rate, we think it sufficiently answers the description of the deed from Taylor to Criswell as set up in the defendants' special answer, and was admissible thereunder, as was also the testimony which the jury were allowed to consider in support of the instrument.

2. The objection that the conveyance above referred to was not properly authenticated, and therefore not legally recorded, is not tenable. It is true that the certificate of the officer before whom the proof of its execution was made, if detached from the deed and considered independent of the seal attached to the certificate, does not sufficiently disclose that he was authorized to authenticate deeds and other instruments so as to admit them to registration. But when considered in connection with the deed, the caption of which reads "Republic of Texas, County and Town of Jasper," and in connection with the seal, which contains the words, "Jasper County Court," we think the certificate discloses the fact that

the execution of the deed was proved up before the county clerk of Jasper County, Texas, who was by the law then in force county recorder. McDonald v. Morgan, 27 Texas, 504. The objection that the word *assigned* instead of *signed* is used in the certificate is wholly without merit.

3. One witness, M. H. Martin, first stated, that in his opinion, when McMullen County was created in February, 1858, the land in controversy was in Live Oak County; but he afterwards stated that he did not know and was not certain of that fact. The testimony of other witnesses and the sketches from the Land Office introduced in evidence show very clearly that the John M. Taylor survey never was in Live Oak County; that it is now, and always has been, several miles west of the western line of that county. The land was originally in San Patricio County. The creation of Live Oak County, in 1856, severed San Patricio County in two parts, the land in controversy being embraced in a small strip of territory that was thus separated from the main body of San Patricio County. It is also true, that by the Act of December 8, 1857, defining the boundaries of San Patricio County, the strip referred to, including the land here involved, was left out of San Patricio County, and not embraced in the limits of any county. This strip of land became a part of McMullen County, which was created by the Act of February 1, 1858. It is not affirmatively shown when McMullen County was organized. However, the sheriff's deed executed February 2, 1875, under which plaintiff claims the land, recites that McMullen County was then unorganized.

In so far as we have been able to ascertain, McMullen County was not attached for judicial purposes to any other county until, by the Act of February 14, 1860, it was attached to Live Oak County. The conveyance from John M. Taylor to Joseph Criswell was recorded June 16, 1859, in San Patricio County; and if at this time this was the proper county for the registration of deeds and other instruments relating to the John M. Taylor survey, then the question of innocent purchaser is eliminated from the case. McMullen County at that time not being organized nor attached for judicial purposes to an organized county, San Patricio, the mother county, had jurisdiction, and was the proper place for the registration of the deed. O'Shea v. Twohig, 9 Texas. 336; Clark v. Goss, 12 Texas, 396; McKissick v. Colquhoun, 18 Texas, 148; Lumpkin v. Muncey, 66 Texas, 311; Henson v. Sackville, 2 Texas Civ. App., 416.

4. It was shown that Taylor always recognized and never disputed Criswell's claim to the land; and the only testimony tending to show repudiation by any one is the fact of the execution sale in 1875, and the further fact that in 1882 the plaintiff leased the land to a tenant, who was occupying an adjoining survey, the term of which lease expired April 1, 1885. But no possession of the land in controversy was taken or held by the tenant under said lease, and it was not shown that plaintiff or those

under whom he claims ever had possession of any of the land. The testimony shows that the defendants took possession in 1883, and have been in actual adverse possession ever since. Under these facts, even if the defendants' title be only an equitable one, the doctrine of stale demand can not avail to defeat it. If it be conceded that the legal title to the entire survey vested in Taylor when the land was granted to him in 1847, and was held by plaintiff at the time of the trial, nevertheless, as it was shown that Criswell performed his part of the contract, and as the defendants, holding under him, went into possession of the land in less than ten years after the first act of repudiation on the part of the holder of the legal title, the doctrine of stale demand has no application, and can not defeat their superior equitable title to half of the land. Goode v. Lowery, 70 Texas, 150; Wilson v. Simpson, 80 Texas, 279.

5. It follows from what has been said, that under the facts disclosed by the record, the plaintiff is not entitled to but half of the land sued for, and this the judgment of the court has awarded to him. We do not concur with the plaintiff in his contention that the defendants' answer sets up title otherwise than by limitation to a specific half of the survey. The judgment awards an undivided half of the land to the plaintiff and the other undivided half to the defendants, and we do not understand the plaintiff as complaining that he was not accorded the right of selection which Taylor had under the conveyance from him to Criswell.

As under the uncontroverted facts plaintiff was only entitled to half the land, we deem it unnecessary to consider the various assignments relating to charges given and refused.

No reversible error was committed in ruling on the admissibility of evidence.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered March 22, 1893.