**AUSTIN, Banking Commissioner, et al.
v. FREESTONE COUNTY. ***
**(No. 441.)**

(Court of Civil Appeals of Texas. Waco.
Nov. 4, 1926. Rehearing Denied
Dec. 9, 1926.)

1. **Appeal and error** ⊙⟿743(1)—**Propositions, not followed by statement of record bearing upon proposition with reference to page of record, are not entitled to consideration on appeal (Supreme Court rule 31).**

Where propositions germane to assignments of error were not followed by clear and accurate statement of record bearing upon proposition with reference to page of record, assignments were not entitled to consideration on appeal under Supreme Court rule 31.

2. **Trial** ⊙⟿401—**Failure to make additional findings, sufficiently included in findings made, and complete statement of facts being in record, was not error.**

Refusal to make additional findings of fact requested by defendants *held* not error, where such findings were either sufficiently included in findings made or were not material to disposition of appeal, and there was full and complete statement of facts in record.

---

3. **Depositaries** ⚍8—**County road bonds and proceeds thereof, invested in United States securities, remained property of county as against depositary to which trust receipts for proceeds were issued.**

Where bank bidding for county road bonds was unable to make required bond as depositary, and sufficient amount of proceeds of bonds was invested in United States securities to secure county for funds so invested and held by purchasing bank, and remainder of proceeds was deposited with depositary, secured by supplemental bond, and in pursuance of local custom trust receipts for funds, held by purchasing bank were issued in name of depositary to county judge, which would be delivered to depositary when amount of road work paid by it reached a certain sum, and depositary thereon becoming insolvent while part of securities were still held by purchasing bank, represented by trust receipts held by county judge, *held* that bonds and proceeds thereof invested in United States securities remained property of county, and purchasing bank held such funds as trustee, without right to permit funds to be used for any other purpose.

4. **Depositaries** ⚍10—**Contract attempting to exempt county depository from payment of interest on proceeds of sale of road bonds held void (Rev. St. 1925, arts. 2547–2549).**

Contract which attempted to exempt county depository from payment of interest on any part of proceeds of sale of road bonds *held* void, in view of Rev. St. 1925, arts. 2547–2549.

5. **Depositaries** ⚍10—**Contract that depository would use road bond proceeds to purchase securities, to be pledged to county as security, held void (Rev. St. 1925, art. 2548).**

Where depository was unable to furnish bond required to secure county for full amount of proceeds from sale of road bonds, agreement that part of proceeds should be used to purchase securities, which county depository would pledge to county to secure amount invested, *held* void, under Rev. St. 1925, art. 2548.

6. **Depositaries** ⚍11—**Where trustee of bonds purchased under invalid contract did not rely upon illegal contract, court could adjudge bonds to rightful owner.**

Where contract between county and county depository regarding proceeds of road bonds deposited in Federal Reserve Bank to purchase bonds was invalid, but Federal Reserve Bank did not rely upon illegal contract and claimed no interest in bonds, court could adjudge bonds to rightful owner.

Appeal from District Court, Freestone County; A. M. Blackmon, Judge.

Suit by Freestone County against C. O. Austin, Banking Commissioner, the First State Bank of Teague, and another. From a judgment for plaintiff, named defendants appeal. Affirmed.

John W. Goodwin and John W. Brady, both of Austin, for appellants.

J. E. & B. L. Bradley and Mr. & Mrs. C. S. Bradley, all of Groesbeck, and W. J. Bryant, and Wm. P. Goar, both of Wortham, for appellee.

STANFORD, J. Suit by Freestone county against the First State Bank of Teague, C. O. Austin, as banking commissioner, and the Federal Reserve Bank of Dallas, as defendants. The object of the suit was to recover certain United States bonds, or foreclose a lien on same, which were alleged to be in the possession of the Federal Reserve Bank, and which the Teague bank and banking commissioner were claiming free from any claim, right, or lien of plaintiff. Trial was had before the court without a jury, resulting in a judgment awarding to appellee, Freestone county, the title and possession of said bonds; hence this appeal by the banking commissioner and the First State Bank of Teague.

At the request of appellants, the court filed findings of fact and conclusions of law, the substance of which findings will hereafter be stated.

[1, 2] By assignments 1 to 9, inclusive, appellants contend the trial court erred in overruling their motion for additional findings of fact and in refusing to find and file the findings of fact requested by them under each of said assignments; and, under their assignments 10 to 33, inclusive, they contend practically all of the court's findings of fact are erroneous and unsupported by the evidence. Under each of these 33 assignments one proposition is submitted, but no statement from the record bearing upon the respective propositions with reference to the pages of the record. These 33 propositions germane to the first to thirty-third assignments of error are followed by what appellants term a correlated statement comprising practically the entire evidence. These 33 assignments and the propositions submitted under same relate to as many different phases of the evidence, and are not such as are entitled to be grouped. The proposition under each of said assignments should have been followed by a "clear and accurate statement of the record bearing upon such proposition, with a reference to the page of the record," so this court could determine whether such assignment and proposition thereunder is supported by the record without having to examine the entire evidence. Appellee objects to our consideration of these assignments on the grounds above referred to, and we think such objection ought to be sustained. Rule 31 (230 S. W. VII); C., R. I. & G. Ry. Co. v. Vesera (Tex. Civ. App.) 237 S. W. 349; Southern Casualty Co. v. Vatter, 115 Tex. 148, 278 S. W. 177. However, we will say, in view of the importance of this case, we have carefully examined the evidence, and find that practically all of the additional findings requested by appel-

---

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lants are either sufficiently included in the findings of the trial court, or are not material to the disposition of this appeal, and also that the findings of fact by the trial court are substantially correct and supported by the evidence. The record discloses that the trial court made a faithful effort to make a fair, full, and accurate finding of fact, and in the main succeeded in so doing. There is a full and complete statement of facts in the record. No reversible error is shown here. Barfield v. Emery, 107 Tex. 306, 177 S. W. 952; Riley v. Austin, 112 Tex. 216, 245 S. W. 907; Wright v. Bank (Tex. Civ. App.) 281 S. W. 270; Hoffman v. Buchanan, 57 Tex. Civ. App. 368, 123 S. W. 168; Goode v. Lowery, 70 Tex. 150, 8 S. W. 73. These assignments are overruled.

We will not undertake to discuss each of the remaining 34 to 46 assignments, inclusive, separately, but will consider same under two general propositions, to wit: (1) Whether the court was correct in holding that appellee owned the United States bonds in suit and in adjudging them accordingly; (2) if not, whether appellee had a valid and enforceable lien upon such bonds. Of course, if the first question is answered in the affirmative, the second does not arise.

There is very little conflict in the evidence. It clearly appears that, after the Teague bank's bid for the road bonds had been accepted and it had contracted to sell same to Jarrett & Co., said bank was unable to make the bond required by law to be made before said road bonds or their proceeds could legally be turned over to said bank, and the bank and the county then agreed that neither said road bonds nor the proceeds of said road bonds should be turned over to the Teague bank or deposited with said bank until after it had furnished the required bond, and that, in the meantime, said road bonds and the proceeds of same should remain under the exclusive control of Freestone county. After a conference with the Federal Reserve Bank of Dallas, and in pursuance to the suggestion of said reserve bank, the Teague bank proposed to the county that, in lieu of said additional bond, which it was unable to make, a sufficient amount of the proceeds of the sale of said road bonds be invested in United States securities to purchase $500,000 worth of said securities, to be delivered to the county to make it secure for such funds so invested, and the county accepted said proposition by an order of the commissioners' court, but which was not placed of record; and, after all this occurred, and in pursuance of said agreement, the county issued the road bonds, sent them to Austin, and had them duly approved and registered and sent to the Mercantile Bank & Trust Company of St. Louis for account of Olive McVey, treasurer of Freestone county, and for disposition in accordance with instructions to be sent to said last-named bank by the officials of Freestone county.

On April 8, 1924, said Olive McVey wired the St. Louis bank to notify Burr & Co. of the receipt of the road bonds and to deliver the bonds to them upon payment of face value and accrued interest, and to remit the proceeds to the Federal Reserve Bank of Dallas for credit of the First State Bank of Teague, and said funds were so collected by the St. Louis bank and so remitted, the amount being $649,715.78; but the Federal Reserve Bank of Dallas knew of the agreement between the county and the Teague bank to the effect that a sufficient amount of said funds to purchase $500,000 of United States securities, for the benefit of Freestone county, was to be so used—in fact, the Federal Reserve Bank was the originator of this method of handling said fund, was a party to said agreement, and agreed to assist in carrying it out. On April 17, 1924, the Teague bank directed the Federal Reserve Bank to purchase the $500,000 worth of United States securities and charge to its account, and said order was executed by the reserve bank on April 22, 1924, by purchasing that amount of said securities, which cost $504,011.56, all of which purchase price was paid by the reserve bank out of the proceeds of the sale of the road bonds. The remainder of the proceeds of the sale of said road bonds was deposited with the Teague bank as county depository, and was secured by a supplemental bond executed by said bank as such depository.

During the time covered by these transactions, there was a custom among banks in the country not to take large quantities of negotiable securities to country banks, and, for convenience, to deposit such securities with the Federal Reserve Banks and take receipts therefor, which were used as substitutes for the securities, which receipts recite the obligation of the Federal Reserve Bank to hold the securities on behalf of the party holding such receipt and that such securities would be delivered to the party holding such receipts on the surrender of same, and this transaction was conducted in the name of the First State Bank of Teague because of a rule of the Federal Reserve Bank not to deal directly with nonmembers. The Teague bank was a member and the county was not, and for that reason the trust receipt for $500,000 of United States securities was issued in the name of the Teague bank, and, according to the previous agreement with the county, the Teague bank delivered said trust receipt to the county and executed and delivered a written assignment, assigning said trust receipt to the county judge of Freestone county and his successors in office.

When the Teague bank had paid on the order of Freestone county as much as $50,000 on road work, under the agreement between said county and Teague bank, it was entitled to be reimbursed by delivery to it of said

United States securities to said amount; so, when said bank's payments on road work reached said amount, the county judge sent the one trust receipt for $500,000 in his possession through the First National Bank of Teague, to the Federal Reserve Bank of Dallas, and had it split up into ten trust receipts for $50,000 each, which were returned to him through the said First National Bank and one of said receipts delivered to the Teague bank. When another $50,000 worth of road work was paid for by the Teague bank, another trust receipt for $50,000 of United States securities was delivered to said Teague bank. At this juncture the Teague bank, in order to get the benefit of the premium on the eight remaining trust receipts for $50,000 each, which it had already received on two of them, requested of the reserve bank and of Freestone county that such securities be exchanged for the same amount of a new issue of United States bonds. The county and the Teague bank appear to have understood that, notwithstanding the · new arrangement, the Teague bank was entitled to the benefits of its original proposition of purchase to the extent of having the use of the road funds without interest, and so said bank was permitted to have the use of the amount in excess of the amount required to purchase of the $500,000 United States securities, and was permitted to have the accrued interest and premiums on the United States securities so purchased, which all amounted to much more than the premiums the Teague bank paid the county as per its bid. So the county judge took the eight trust receipts for $50,000 each of United States securities in person to the reserve bank of Dallas and surrendered them and received in exchange therefor eight trust receipts for $50,000 each for said United States bonds, and, when the Teague bank had paid another $50,000 on road work, another trust receipt for $50,000 of said United States bonds was delivered to said Teague bank. These payments in United States securities and United States bonds to the Teague bank were made strictly in accordance with the agreement between said bank and the county, as evidenced by the order of the commissioners' court of Freestone county of date April 14, 1924.

The remaining seven United States bonds for $50,000 each are now in the possession of the Federal Reserve Bank of Dallas, and the trust receipts for same are held by the county judge of Freestone county, and are the bonds in controversy in this suit. Neither the county nor the Teague bank at any time intended that the bank should acquire ownership, possession, or control over that portion of the proceeds of the road bonds necessary to purchase $500,000 of United States securities, nor that the county would relinquish or the bank acquire any interest in the bonds in conflict with that purpose in accordance with the agreement in placing the bonds with the county for the purchase of the United States securities in the first instance. That $464,981.08 of the proceeds of the road bonds has never been expended or drawn out of the Teague bank by the county, and is still owing by the bank to the county on account of said road funds, subject to whatever credit should be allowed on account of the disposition of the bonds involved in this suit. That on May 22, 1925, the defendant, the commissioner of banking, suspended operations of the Teague bank and took charge of it for liquidation, and has continuously had same in liquidation since, and on May 23, 1925, he forbade the Federal Reserve Bank delivering the $350,000 of United States bonds involved in this suit to the county, and notified said reserve bank that he claimed said bonds as the property of the Teague bank and intended to test such claim in the courts. That on said date, May 23, 1925, all interest on the bonds in dispute up to June 15, 1925, had been appropriated by the Teague· bank. That all the securities in dispute and their predecessors are and were payable to bearer and title passed by delivery. That, under the rules and regulations of the Federal Reserve Bank, said securities cannot be withdrawn from it by any one without surrendering the trust receipts.

[3] We think that it is clear that the road bonds remained the property of and subject to the control of Freestone ·county· until they were sold, and that, after the sale, the proceeds of such belonged to and were under the control of Freestone county until it caused same to be placed in the Federal Reserve Bank at Dallas, and that it had a perfect right to the whole of said funds at the time, and prior to the time such deposit was made in the Federal Reserve Bank of Dallas it was fully understood and agreed between the Teague' bank and the county, of which agreement the Federal Reserve Bank had full knowledge and to which it was a party and the originator, that a sufficient amount of said deposit to purchase $500,000 of United States securities should be used for that specific purpose, which amount proved to be $504,011.56. So this amount of said deposit, in pursuance of the agreement and understanding of all parties, was a special deposit by the county for a specific purpose, to wit, to purchase $500,000 of United States securities, and, this being true, the title to said $504,011.56 remained in Freestone county, and the Federal Reserve Bank of Dallas held said amount of said funds as trustee, and was not at liberty to use or permit said trust fund to be used for any other purpose. McBride v. American Ry. & Lighting Co., 60 Tex. Civ. App. 226, 127 S. W. 229, and authorities cited; First Nat. Bank v. Price et al. (Tex. Civ. App.) 262 S. W. 797; Sharon G. Co. v. Bank (Tex. Civ. App.) 277 S. W. 449; N. W. Lumber Co. v. Bank, 130 Wash. 33, 225 P. 825, 39 A. L. R. 922; 7 C. J. p. 631, §

307. Said funds, the title to which was in Freestone county, being used to purchase $500,000 United States securities, the title to said securities vested in Freestone county. Long v. Steiger, 8 Tex. 461; Burns v. Ross, 71 Tex. 516, 9 S. W. 468; Gardner v. Randell, 70 Tex. 453, 7 S. W. 781; Henderson v. Rushing, 47 Tex. Civ. App. 485, 105 S. W. 840; Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 549; Watson v. Harris, 61 Tex. Civ. App. 263, 130 S. W. 237; 3 Pom. Eq. Jur. p. 2345, § 1037; 26 R. C. L. p. 1227, § 73, note 5.

Said securities were not only purchased and paid for with funds belonging to Freestone county, but it had been agreed and was fully understood by the county, the Teague bank, and the Federal Reserve Bank of Dallas, that said securities should be so purchased and paid for, and that they should be held by the reserve bank for the use of the county, and that trust receipts, as tokens or symbols thereof, executed by the depository Federal Reserve Bank, should be held by the county judge of Freestone county and his successors in office; all of which was accordingly carried out, and said securities became the property of Freestone county. It is true the excess of said road fund above the amount necessary to purchase $500,000 worth of United States securities, to wit, $145,704.-22, was placed to the credit of the Teague bank without any restrictions or reservations, and that amount became the property of the Teague bank, and it thereby became debtor to the county in that sum, which sum was secured, not by the United States securities purchased, but by a supplemental bond made by the Teague bank as county depository under the provisions of article 2548, Revised Statutes of 1925; but, as to the remainder of such fund, $504,011.56, which was necessary to purchase and which was used under the agreement of the parties in the purchase of such United States securities, we think this amount of said total deposit went to the credit of the Teague bank on the books of the Federal Reserve Bank simply as a matter of bookkeeping under an express contract and agreement between the county, the Teague bank, and the Federal Reserve Bank that it should be so used for the specific purpose of purchasing said $500,000 of United States securities, and hence was a special deposit made by the county for said specific purpose, by virtue of which, and by virtue of the agreement of the parties, said amount did not become the property of the Teague bank, but remained the property of Freestone county, and, this fund having paid for the $500,000 United States securities, said securities, as above pointed out, became the property of the county.

[4, 5] Thus far we have treated the contract between the county and the Teague bank; the county depository, as valid and legal, but we do not wish to be understood as so holding. Our statutes (Rev. St. 1925, arts.

2547, 2548, and 2549), provide, in effect, that funds arising from the sale of the county, district, or municipal bonds, etc., shall be deposited in the county depository, and that such funds shall bear the same rate of interest as agreed upon by the county and depository for other public funds. The commissioners' court of Freestone county could not by contract suspend the plain provisions of our statutes. So that part of the contract attempting to exempt the Teague bank from the payment of interest on any part of the proceeds of the sale of the road bonds, we think, was void. Moreover, if the contract between the county and the Teague bank was that a sufficient amount of the road funds should be used to purchase $500,000 worth of United States securities and said securities pledged to the county to secure such amount of the road funds, as contended by appellants, then, we think, such contract or agreement was illegal and void, in that it was in contravention of the plain provisions of article 2548 of the Revised Statutes of 1925. To permit the Teague bank, with the proceeds of the sale of the road bonds, to purchase United States bonds, and pledge such bonds to the county to secure the amount said bank agreed to pay for said road bonds, or for the amount said securities cost, would be, in effect, to permit said bank to speculate on public funds at the risk of the county, which the law does not tolerate.

[6] We think the contract between the county and the Teague bank, as the same was attempted to be carried out, was invalid and unenforceable, whether we adopt appellants' or appellee's theory of said contract, but it does not follow that proper relief could not be administered under the facts of this case by the trial court or this court. The evidence, without any conflict, shows that the road bonds up to the time of their sale belonged to and were under the control of Freestone county, and that the money received for said bonds belonged to and was under the control of said county, and, by the direction of the county treasurer of said county, said funds were deposited in the Federal Reserve Bank of Dallas, with the specific agreement and understanding on the part of Freestone county, the First State Bank of Teague, and the Federal Reserve Bank of Dallas, that a sufficient amount of said funds to purchase $500,000 of United States securities should be so used, and said securities left with the said reserve bank and the trust receipts for same held by Freestone county. $504,011.56 of said road funds was used to purchase the $500,000 United States securities, and said securities left with the Federal Reserve Bank of Dallas, and its trust receipts for same, as per the agreement of all parties, were delivered to the county judge of Freestone county to be held by him and his successors for said county, and said receipts to the amount of $350,000 of United

States bonds, for which said securities were exchanged, are still so held for Freestone county. The Federal Reserve Bank of Dallas, as shown by its answer, claims no interest in said bonds, and offers to deliver same into the registry of the court, or to deliver same, upon the surrender of its trust receipts, to whomsoever the court may adjudge and direct them to be delivered.

In view of the above state of facts, and since it is not necessary, as to the reserve bank, which is in the attitude of a stakeholder or trustee, to rely upon any illegal contract, the trial court was, and this court is, free to adjudge said bonds to the rightful owner. We think the trial court rendered the proper judgment in adjudging said bonds to Freestone county, which judgment we hereby in all things affirm.