M. L. GAMBRELL v. WM. STEELE.

(Case No. 4359.)

1. PRE-EMPTION — HOMESTEAD. — One occupying a homestead for which he has received a deed, the purchase money for which remains unpaid, being secured by a vendor's lien, is not entitled to acquire land as a pre-emptor.

ERROR from McLennan. Tried below before the Hon. L. C. Alexander.

Suit by Wm. Steele in trespass to try title against B. O. Gambrell in his life-time, to recover one hundred and sixty acres of land in McLennan county.

The petition alleged that in October or November, 1872, the land was vacant public domain; that on the 20th of

October, 1872, Mrs. Sarah Shamblin settled on it, under pretense of pre-empting it; that she neither at the time of the settlement, nor at any other time, made the affidavit required by law to entitle her to the land; that no lawful survey was made of it for her; that without any lawful right she remained on the land until January, 1875, at which time she abandoned it and has not set up any claim to it since; that on April 16, 1876, appellee located a certificate for six hundred and forty acres issued to the International & Great Northern R'y Co. upon the land, numbered 411; that he had the field notes of said survey returned to the land office at Austin and applied for a patent; that his field notes were sent back for correction, in accordance with instructions from said office; that the correction was made and filed in the land office at Austin on January 19, 1877, and that at that time the land was vacant and subject to his location; that the commissioner of the land office refused a patent to him by reason of an affidavit filed by B. O. Gambrell on June 23, 1876, the substance of which was that affiant Gambrell was a *bona fide* settler upon one hundred and sixty acres of vacant land (the same in controversy in this suit) surveyed for Mrs. Sarah Shamblin November 20, 1872; that he and Sarah Shamblin had occupied and improved said land as a homestead for three years consecutively from November 20, 1872; that he was a married man, and made the affidavit to obtain the land as a homestead under the act of May 26, 1873.

The petition charged that this affidavit was false and fraudulent, and was made to deceive the commissioner of the land office; that he was deceived by it, and issued the patent to said one hundred and sixty acres of land to B. O. Gambrell on January 8, 1877.

The petition further alleged that this affidavit made by Gambrell was false, in this: that neither Mrs. Shamblin nor Gambrell, or both of them jointly or separately, occu-

pied and improved said land as a homestead for three consecutive years prior to November 20, 1872; that Mrs. Shamblin abandoned the land in January, 1875; that from January to August, 1875, Gambrell occupied and claimed as a homestead fifty acres of land of the Jones survey, and during the seven months intervening he did not occupy the land in controversy; that the supporting affidavits were also false in fact; that Gambrell never did occupy said land until August, 1875; that the commissioner of the land office was deceived and defrauded by said false affidavits, and issued a patent to said land to Gambrell; that by reason of petitioner's location of the certificate upon the land, and the return of the survey and field notes to the land office at Austin, he was entitled to be invested with the title, and that the patent to Gambrell inured to his benefit, and prayed that the title to Gambrell be divested and vested in him.

The death of B. O. Gambrell was suggested, and his wife, Mrs. —— Gambrell, as survivor, made herself a party, and answered "not guilty" and special pleas.

Steele introduced in evidence his certificate and transfer of the same; his location and survey of the land in dispute; also written evidence that Mrs. Sarah Shamblin settled on the land October 2, 1872; that she conveyed her right to the said land to B. O. Gambrell on January 19, 1875.

He also introduced the affidavit of Mrs. Sarah Shamblin as a pre-emptor; defendant's patent to the land; the affidavit of B. O. Gambrell, supported by the affidavit of Knowles and McLain, that he and Mrs. Shamblin, his vendee, had occupied the land for three years consecutively from November 20, 1872, sworn to June 17, 1876; also the patent to Gambrell to the land on January 8, 1877.

The agreement of counsel showed that Mrs. Shamblin settled on the land in dispute in October, 1872. About

one year before B. O. Gambrell's purchase of Mrs. Shamblin, he purchased from his father fifty acres of land, who sold it to him " to keep him from going west," who deeded it to him, receiving his note, on which was indorsed payments, the last dated in February, 1876. Gambrell went on the fifty acres purchased from his father as early as 1873, and fenced it, putting twenty acres in cultivation, and building a house on it, in which he resided until August, 1875, when he moved on the land in controversy, when he rented it for the year following. The purchase money was not then paid. Mrs. Shamblin did not occupy three years before her sale.

*Battle & Maxcy,* for plaintiff in error.

*Wm. L. Prather,* for defendant in error.

BONNER, ASSOCIATE JUSTICE.— In our opinion, there is a controlling question in this case which leads to an affirmance of the judgment below, and renders unnecessary an investigation of all the numerous errors assigned. Some of these do not seem to be seriously insisted upon, as they are merely stated in the brief of counsel without reference to authorities, and one of them, the twelfth, is too general.

From the testimony in the case, it appears that at the time B. O. Gambrell purchased Mrs. Shamblin's pre-emption claim in controversy, and for seven months thereafter, he had a homestead of his own, derived through a deed from his father. Although the same had not been paid for, yet it by no means follows that it was not his homestead. If the vendor's lien were not waived, he held the homestead subject to that incumbrance. But until the lien was enforced, which might never occur, the law would protect it as his homestead so long as he occupied it as such, not only as against third parties, but as

against the father also. Woolfork *v.* Rickets, 41 Tex., 358.

The evident purpose and policy of our pre-emption laws are to induce immigration, afford homes to the actual settler, and thereby cause the settlement and improvement of the country. They were not intended, however, to give homes to those who already had them, of their own, in the state, and to permit these owners to acquire pre-emption titles through occupancy by tenants.

As the right of Mrs. Shamblin to her pre-emption had not been perfected before her abandonment and sale of the land to B. O. Gambrell, then under the circumstances of this case as shown by the evidence, it was not subsequently perfected by him, and the land was subject to location by the plaintiff.

The rights of a pre-emption settler, though they partake of the nature of a gift from the state, when properly acquired under the laws, should be protected; but unless so acquired should not be upheld to the detriment of the equally meritorious claim of one who holds under a valid certificate for land, issued by the state in payment of a pre-existing obligation.

As the defendant below, Mrs. Gambrell, claimed the land under a patent, there was abstract error in the third paragraph of the charge of the court, in which the jury were instructed that the certificate, transfer, location and survey under which plaintiff Steele claimed title were sufficient to authorize them to find for him, unless his right to recover was defeated by some matter set up and proved by the defendant.

The patent under which defendant claimed conveyed the legal title and was *prima facie* evidence of her right to the land, and the burden of proof devolved on plaintiff to show a prior superior equity.

We are further of opinion, however, that this error was not, under the circumstances, sufficient to demand a

reversal of the judgment, as the jury, under the evidence, could not have been misled; for the charge, taken as a whole, stated also the legal effect of the pre-emptio claim under which the patent issued.

Judgment affirmed.

AFFIRMED.

[Opinion delivered November 15, 1881.]