## Byrd Eastham v. Irene Roundtree.[1]

(Case No. 920.)

1. Evidence — Witness. — A defendant who, in a suit for property brought by an administrator, disclaims all interest, is a competent witness to acts and conversations of the decedent affecting the title.

2. Fraud — Trusts. — A child whose father purchases land and pays for the same with money which he owes the child, taking title in the name of a third party with his knowledge and consent, may recover the property, though the father may at the date of the purchase have been in failing circumstances, and intended by the purchase to prefer the child to other creditors.

3. Same. — If such a purchase, with the title thus conveyed, was intended by the father as an advancement, the child would be entitled to recover the property only if the advancement was not to the prejudice of existing creditors.

4. Fraud. — If a father in failing circumstances, with a view of secreting his property, shall invest in land, taking title thereto in the name of a third party with his consent, and on the trust that he will hold one-half interest in the same as an advancement for the child of the purchaser, the title having vested in the third party, a court will not divest it to enforce the trust at the suit of the child, though the child did not participate in the fraud and had no knowledge thereof.

5. Resulting Trusts. — No resulting trust can spring from an act contrary to public policy or a statute.

Appeal from Walker county.

*Randolph & McKinney*, for appellant.

*J. A. Baker*, for appellee.

Stayton, Associate Justice. — This suit was brought by the appellant, as the administrator of the estate of Carothers, against J. M. Roundtree and J. W. Bowden, to recover a house and lot in the town of Huntsville.

[1] In this case and the two following, nothing was saved from the fire which destroyed the court-house and records in Galveston, except the opinions.

Roundtree and Bowden disclaimed, and Irene Round-tree intervened in the suit by her guardian, and claimed an undivided one-half of the property sued for.

She claimed that the property was bought from L. Roundtree for the sum of $5,000, and that one-half of the purchase money was paid by J. M. Roundtree, her father, out of money which she had inherited from her mother's estate, or that the same was paid by her father for her use and benefit on account of moneys belonging to her which her father had used.

By an amendment she alleged that, if her father did not pay for one-half of the property as stated in her original petition, that the same was paid by her father for her expressly as an advancement.

To the pleading of the intervenor the plaintiff replied that if J. M. Roundtree, the father of the intervenor, paid any part of the purchase money for the property, that the same was paid with his own money, and that the title to the entire property was taken in the name of Carothers for the purpose of hindering, delaying and defrauding the creditors of J. M. Roundtree.

When the property was bought from L. Roundtree the deed was made to Carothers, who, the intervenor alleged, knew that the property was paid for when the deed was made, and agreed to hold one-half of the property in trust for her.

There was evidence tending to show that J. M. Round-tree may have had money in his hands at the time of the purchase which belonged to his daughter, the intervenor, or that he may have been indebted to her on account of money belonging to her which he had used.

There was also testimony tending to show that at the time the purchase was made, J. M. Roundtree was heavily indebted, and much pressed by his creditors.

There was also testimony tending to show that Caroth-ers in his life-time admitted the facts in reference to the

manner in which he held the property to be as alleged by
the intervenor, and that J. M. Roundtree negotiated the
purchase of the property and paid for the intervenor one-
half of the purchase money, and that the other half was
paid by Carothers through him.

This cause was before the court at a former term.

Upon the former trial, as upon that from which the
present appeal is prosecuted, the testimony of J. M.
Roundtree was objected to by the appellant, and ad-
mitted over his objection.   Upon the former appeal it
was held that there was no error in admitting the evi-
dence, and we now see no reason to doubt the propriety of
the ruling then made.

It is claimed that the charge of the court was not suf-
ficiently full in that part which referred to the certainty
and fullness of proof necessary to establish a resulting
trust.

The charge was as full as the decisions upon this sub-
ject require; in fact, the learned judge who tried the
cause seems to have complied fully and clearly with the
rule established by law upon this subject.

On the trial the court, in the second charge given, in
effect charged the jury that if J. M. Roundtree for the
benefit of his daughter, the intervenor, out of his own
money paid one-half of the purchase money for the
property in controversy at the time the same was pur-
chased, intending the same as an advancement to her,
that then she was entitled to recover.   To this charge the
appellant excepted, because the court did not qualify
the charge by instructing the jury that, if the father
paid one-half of the purchase money, intending the same
as an advancement to the intervenor, and took the deed
in the name of Carothers for the purpose of hindering,
delaying and defrauding his creditors, that then the in-
tervenor could not recover.

The appellant also asked the court to instruct the jury

in effect, that if J. M. Roundtree paid one-half of the purchase money of the property out of his own money, and took the deed in the name of Carothers for the purpose of hindering, delaying and defrauding his creditors, that then the intervenor could not recover. These charges were refused, upon the ground that the intervenor could not be affected by the fraud of her father to which she was not a party; and the refusing to give the charges asked, as well as the giving of the second charge given, was assigned as error.

If J. M. Roundtree paid one-half of the purchase money of the property with money which the intervenor had inherited from her mother, or with his own money, for the benefit of the intervenor, on account of money which belonged to her and had been used by him, and in satisfaction thereof, then there can be no question, if Carothers knew the same and assented to such payment, that she would have been entitled to recover, notwithstanding it may have been the intention of her father thereby to prefer her to other creditors.

If the father paid one-half of the purchase money of the property with his own money, intending the same as an advancement to her, then the intervenor was entitled to recover, if the act of the father was not to the prejudice of existing creditors, but not otherwise.

If this suit was between J. M. Roundtree and the administrator of Carothers' estate, and it appeared that the purchase was made with the money of J. M. Roundtree, and that the deed was taken in the name of Carothers, with intent thereby to secrete the property, and thereby to hinder, delay and defraud the creditors of J. M. Roundtree, there is no question that the deed would have to stand, not only because the statute makes such illegal acts binding between the parties, but for the further reason that the courts would not interfere to relieve a party from his own fraud.

The main question in this case is, do the same rules apply as between Irene Roundtree, the intended beneficiary, and the representative of the estate of Carothers, that would be applicable in a controversy about the property between such representative and J. M. Roundtree, notwithstanding that Irene Roundtree is, so far as the pleadings and proof show, entirely free from participation in any fraud whatever?

We are of the opinion that the same rules must apply.

The deed to the property was made to Carothers, and title must be held to have passed as appears upon the face of the deed, unless the intervenor can show a resulting trust in her favor arising upon the fact that her father paid one-half of the purchase money therefor for her benefit, under circumstances which make the transaction lawful.

If one-half of the purchase money was paid by the father under such circumstances as made such investment for the benefit of the intervenor fraudulent as to his creditors, then it is certainly true that all the claim she has is based upon a transaction illegal, because made to hinder, delay and defraud creditors, and from which no resulting trust can spring in her favor, although she may not have participated in the fraud and may not have had any knowledge thereof; for in such case she appears as the intended donee of her father, through a transaction forbidden by law.

To permit a man's children to recover property which he had fraudulently placed in the name of another for the purpose of placing it beyond the reach of his creditors, upon the ground that it was intended for their benefit, would be to contravene a well-settled public policy, and to offer a premium to dishonesty. It is a universal rule that no one can claim a right through the fraud of himself or another. *Ex turpi causa non oritur actio.* No resulting trust can spring from an act contrary to public

policy or a statute. Perry on Trusts, 131; 1 Leading Cases in Equity, 320, 343. ·

In the case of Murphy *v.* Hubert, 16 Pa. St. (4 Harris), 56, which was much like the present in its facts, it was decided that no resulting trust could be raised through an act forbidden by law; that to raise such a trust the transaction upon which it was based must be honest. The rule and reasons for the same are well stated in the case above referred to.

The rule is thus stated by an elementary writer: "As a general rule, a contract or agreement cannot be made the subject of an action if it be impeachable on the ground of dishonesty, or as being opposed to public policy — if it be either *contra bonos mores*, or forbidden by the law. In answer to an action founded on such an agreement, the maxim may be urged, *ex malificio non oritur actio*. A contract cannot arise out of an act radically vicious and illegal; those who come into a court of justice to seek redress must come with clean hands, and must disclose a transaction warranted by law; and it is quite clear that a court of justice can give no assistance to the enforcement of contracts which the law of the land has interdicted." Broom's Legal Maxims, 734.

Such being the principles applied to contracts, the rule loses nothing of its force when applied to a case in which a party seeks to base a right upon a presumption founded upon an act forbidden alike by good morals and the law of the land.

The proposition contended for by the appellee, and sanctioned by the court below in the charges given and refused, is, in effect, that if J. M. Roundtree, with his own funds, paid one-half of the purchase money and had the deed made to Carothers with intent to defraud his creditors, that the courts of the country will permit proof of these facts to be made, and then presume and enforce a right growing out of the same in favor of the daughter. Such a proposition cannot be maintained.

We do not wish to be understood as expressing any opinion as to the sufficiency of the evidence of either party to establish their respective propositions; what we have said is solely upon the theories upon which the rulings of the court were made in the trial of the case. For the errors of the court below in giving the second instruction, and in refusing to give the instructions asked by the appellant, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 17, 1882.]