No. 5982

H. A. BURNS v. SUSAN ROSS ET AL.

1. TRUST—PAYMENT OF PURCHASE MONEY.—The plaintiff furnished the
   purchase money for a tract of land.  The legal title for it was conveyed
   to the ancestor of the defendants.  *Held*, that the equitable title vested
   in the plaintiff and he was entitled to recover the title and possession
   of the land; such right does not depend upon the existence of an ex-  .
   press agreement at the time of the execution of the deed.
2. SAME.—By implication equity charges the holder of the legal title in
   such case with the duties and liabilities as upon express agreement re-
   cognizing the trust.

APPEAL from Burnet.  Tried below before the Hon. W. A.
Blackburn.

This is a writ of error from a judgment against Burns, the
plaintiff below.  The object of the suit is to recover one hun-
dred acres of land in Burnet county—a part of the William
Slaughter league.  The case in the petition is that the land
had been originally purchased by plaintiff and the considera-
tion therefor paid by him, but the conveyance from the ven-
dor was made to W. B. Ross through whom defendants claim
by inheritance, without the knowledge or consent of plaintiff
and through the fraud of said Ross.

The plaintiffs answered by general denial and plea of stale
demand.

A verdict and judgment were rendered for the defendants.

The testimony was substantially as follows:

J. T. Moore, a witness for defendants, testified "that he, in.
company with W. B. Ross, H. A. Burns, one of the Ross boys
and Lewis Thomas, about the latter part of July, 1877, rode
over all of the lands offered for sale by Lewis Thomas.  After
we had been around the lands Ross asked Lewis Thomas his
price.  He told him six thousand seven hundred dollars.  Ross
said the price was too high, and called Thomas's attention to
the fact that the fences around the farm were rotten, and to
the scarcity of rail timber.  Thomas replied that should be no
objection to a trade, that he would put in a one hundred acre
tract, well timbered (the land in controversy), and twenty acres

in the Mormon cedar brake. Ross then replied, "Well if you will do that, you may consider the trade closed." We then agreed to go to Burnet the next day to fix up deeds. After the trade was closed, Ross, Burns, Thomas and witness rode over the Cavin lands. "Burns seemed well pleased with the same and made no objection to it in my hearing, or while I was present. On the next day I came to Burnet, where I met Ross, Burns, Cavin and Thomas. Thomas and Ross went to Bob Cates's office, and there the deed was drawn from Thomas to W. B. Ross. H. A. Burns came in the office of Cates several times during the preparation of the deed."

B. H. Cavin testified "that a short time after the sale from Thomas to Ross he had a conversation with Thomas in which he (Thomas) said that he had to give Ross one hundred acres of the Slaughter survey to get him to close the trade with him."

Defendants then proved by N. A. Cavin that Thomas informed him, a short time after his sale, "that he had to give W. B. Ross the land in controversy to get him to purchase his other lands."

W. M. Ross testified "that H. A. Burns had lived in the neighborhood of the land in controversy since a short time after the purchase by Burns of the Cavin land, and, that during all of that time he had laid no claim to the one hundred acres."

Defendants proved payment of taxes by W. B. Ross from 1877 to 1886.

Plaintiff admitted that both he and Ross had their deeds filed for record on the same day that they were respectively executed; that he could have read the deed from Thomas to Ross but did not think he had; that he and Ross camped together the same night and went together to their homes in Fayette county; that he did not investigate the manner of the transfer from Thomas to Ross, or make any inquiries about what lands had been deeded to Ross, and that he and Ross had lived neighbors from the fall of 1877 till the death of Ross in May, 1886.

The charge of the court is given in opinion.

*J. G. Cook*, for plaintiff in error: If the plaintiff did in fact furnish and pay the consideration to Thomas for the land in controversy, and the conveyance was made to Ross, the plaintiff's right to the land is not conditioned upon an express promise on the part of Ross to re convey to plaintiff; such promise will be implied. (Long v. Steiger, 8 Texas, 461; Tarpley v. Poage, 2

Texas, 150; Smith v. Strahan, 16 Texas, 320; Leaky v. Gunter,
25 Texas, 403; McKamey v. Thorp, 61 Texas, 650; 2 Story Eq.,
sec. 1201; 2 Wash. Real Prop., 475; Howell v. Howell, 15 N. J.
Ch., 77; Millard v. Hathaway, 27 Cal., 139; Baumgarten v.
Guessfield, 38 Mo., 36.

*T. E. Hammond*, for defendant in error: 1.   The trust of a
legal estate, whether taken in the name of the purchaser or
others, whether jointly or successively, results to the person
who advances the purchase money.   The charge of the court
properly submitted that issue to the jury.
  2.   The plaintiffs' suit was brought upon an express agree-
ment on the part of W. B. Ross to convey to him the land in
controversy, and this issue was properly submitted to the jury;
and the court did not err in refusing to give the special charge
requested by the plaintiff.   (2 Pom. Eq. Juris., sec. 1037, and
note 1, p. 610;   Withers v. Withers, Ambl., 151;   Wray v.
Steele, 2 V. & B., 388; Loyd v. Read, 1 P. Wms., 607; Rider v.
Kidder, 10 Ves., 360;   Case v. Cadding, 38 Cal., 191;   Long v.
Steiger, 8 Texas, 461, 62;   Newman v. Farquhar; 60 Texas, 640;
R'y Co. v. Wright, 62 Texas, 515;   Cunio v. Burland, Texas Unr.
Cases, p. 469, and authorities there cited.

  ACKER, JUDGE.   Plaintiff in error brought this suit against
defendants in error as heirs and representatives of W. B. Ross,
deceased, on the twenty-seventh day of September, 1886, to
recover one hundred acres of land, part of the William Slaugh-
ter league.   It was alleged in the petition that the land was
purchased by plaintiff in error, and the consideration therefor
furnished by him, but that the conveyance was made to W. B.
Ross without plaintiff's knowledge or consent, and through the
fraud and misrepresentation of W. B. Ross.
  Defendants in error answered by general denial, not guilty,
and special defenses not necessary to mention here.
  The case was tried by a jury, October 12, 1886, resulting in
a verdict and judgment for the defendants.   The court charged
the jury as follows:   "The questions of fact which you are to
determine by your verdict are:   First.   Was Burns induced to
purchase Cavin's land in consideration of Thomas's promise to
convey him (Burns) the one hundred acres of land in dispute?
Second.   Did Ross, at the time or prior to the execution of the
deed to him, agree to convey the land to Burns?   If you are

satisfied to answer both of these questions in the affirmative, from a preponderance of creditable evidence in the case, you will find for plaintiff; if not so satisfied, for defendants."

The plaintiff requested the following special instruction, which was refused by the court: "The promise, if any, made by W. B. Ross at the time of receiving the deeds to the land in controversy, will entitle plaintiff to recover, whether such promise was an express or implied promise; and such promise will be implied if the jury believe that plaintiff furnished the consideration for the purchase of said land."

Under proper assignment of error, it is contended that the court erred in the charge given and in refusing the special charge requested, and this is the only question involved in this appeal. If the consideration for the land was actually furnished by plaintiff, a trust resulted in his favor at the time the legal title was conveyed to Ross, and his right to recover the legal title and possession of the land was not dependent upon an express agreement upon the part of Ross to convey the land to him. By implication, equity charges Ross with the duties and liabilities arising upon such an express agreement. (McKamey v. Thorp, 61 Texas, 648; 2 Pomeroy's Equity, secs. 981, 1031.)

We think the court below erred in the second paragraph of the charge given, and in refusing the special instruction requested by plaintiff, for which the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted October 23, 1888.

STAYTON,
*Chief Justice.*