## MORTIMER v. JACKSON.

(Court of Civil Appeals of Texas. San Antonio. Feb. 26, 1913. Rehearing Denied March 26, 1913.)

1. EVIDENCE (§ 230*)—ADMISSIONS.

In trespass to try title, the testimony of the grantor in a deed to the land, that plaintiff's grantor, who paid the purchase price, directed that another, through whom defendant claimed, be named as grantee and that she would afterwards convey it to him, was admissible, where the grantee was present and heard such statements and agreed to the arrangement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 835–851; Dec. Dig. § 230.*]

2. VENDOR AND PURCHASER (§ 220*)—INNOCENT PURCHASER—TRUST.

A person, who obtained a deed to the land in controversy, in trespass to try title, from a person who had no interest in it, and made no claim to it, was not entitled to be protected as an innocent purchaser against the person for whom the land was held in trust.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 461–465, 720; Dec. Dig. § 220.*]

3. TRUSTS (§ 149*)—TRANSFER BY BENEFICIARY—TITLE CONVEYED.

Where the person who paid the purchase price for land caused it to be conveyed to another, so it would be beyond the reach of his wife, who was suing for a divorce, the agreement being that the grantee should afterwards convey it to him, his deed, executed to the plaintiff without the legal title having been conveyed to him, conveyed the equitable title to the land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 194; Dec. Dig. § 149.*]

**4. TRUSTS (§ 42*) — EVIDENCE — WRITTEN AGREEMENT—ACKNOWLEDGMENT.**

In trespass to try title, a document, wherein the holder of the equitable title to the land acknowledged that she held the same in trust for plaintiff's grantor, was admissible in evidence to show an admission as to title, though not acknowledged as required by law.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 61; Dec. Dig. § 42.*]

**5. CONTINUANCE (§ 14*)—GROUNDS.**

In trespass to try title it was not error to refuse a continuance sought in order that two persons who clearly had no interest in the land, and through whom defendant did not claim, might be made parties.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 25, 99–112; Dec. Dig. § 14.*]

**6. TRUSTS (§ 43*)—EVIDENCE — DECLARATION OF CESTUI QUE TRUST.**

While the cestui que trust could not give his declarations in evidence to establish a trust in land in controversy in trespass to try title, he was properly permitted to testify to the facts, though such testimony was self-serving.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

Appeal from District Court, Bexar County; Edward Dwyer, Judge.

Action by Dora Jackson against Paul Mortimer, Jr. From a judgment for plaintiff, defendant appeals. Affirmed.

Geo. Powell and E. H. Powell, both of San Antonio, for appellant. C. M. Chambers, of San Antonio, for appellee.

FLY, C. J. This is an action of trespass to try title to lot 2, block 8, city block 650, near Southern Pacific Railway Company's track, San Antonio, Tex., instituted by appellee against appellant, who answered by general demurrer, general denial, and a plea of not guilty. The court instructed the jury to return a verdict for appellee, and upon that verdict judgment was rendered in favor of appellee for the land for which suit was instituted.

Appellee showed by her evidence that Charles Nunn sold the lots in controversy to Rhoda Harris on February 17, 1892, she conveyed it to George Stumberg on April 4, 1895, and Stumberg conveyed it to Diana Singleton on April 29, 1901; the consideration being $75 in cash and a promissory note for $125 signed by Diana Singleton. Stumberg released the vendor's lien to Diana Singleton on February 26, 1903. On March 5, 1902, Diana Singleton married Martin Milholland, and the latter sold the lot to appellee on January 22, 1910. Appellee proved that Martin Milholland paid all the money for the land out of his separate estate, and that the deed was made by Stumberg to Diana Singleton, because of divorce proceedings between him and his then wife. Diana Singleton agreed at the time of the execution of the deed to convey the land to Martin Milholland when the divorce was settled. The conveyance was never made, but after her marriage—that is, on February 27, 1903— she executed an instrument in writing in which she certified that her husband paid for the land out of his separate estate, and that the deed should have been made to him. The Milhollands never lived on the property. Martin Milholland swore that he made all the payments on the land. The Milhollands had no children, but Diana Singleton had two girls before she married Milholland. Appellant introduced in evidence a deed from Mary Williams dated August 14, 1909, conveying to him the lot in controversy, and also the deed of George R. Stumberg to Diana Singleton. He also introduced in evidence a redemption certificate from the state of Texas, dated September 8, 1909, showing payment of the taxes due by Diana Singleton for the years 1905 to 1908, inclusive. Mary Williams testified that she was the mother of Diana Singleton, and that she had two daughters, Mary Ann Whitehead and Nancy Whitehead. She did not know who paid for the lot, but she stated that her daughter borrowed $5 from her to pay for it. She testified that when Martin Milholland thought his first wife was going to take the place he "turned it into Diana's name." She testified that she did not know who bought the lot, "but that Martin Milholland was suing his wife for a divorce, and put lot in name of Diana Singleton. Milholland turned the property in Diana's name when his wife came down with the child and he thought she was going to take the place." The common source was George R. Stumberg, Jr. It is agreed in the statement of facts "that both plaintiff and defendant filed abstract of title from sovereignty of soil, and that said abstracts were the same, except memorandum made before Jos. Ryan"; the "memorandum" referred to being the acknowledgment on the part of Diana Singleton that the lot was the separate estate of Martin Milholland.

[1] The first assignment of error assails the action of the court in permitting testimony of George R. Stumberg as to declarations of Martin Milholland, made when the deed was executed, to the effect that the deed should be made to Diana Singleton, although he paid the purchase money, and she was to afterwards convey it to Milholland. The testimony was objected to as hearsay and self-serving, for the purpose of ingrafting a trust on the land. The bill of exceptions, as well as the statement of facts, shows that the declarations were made in the presence of Diana Singleton and that she then and there agreed to the arrangement. The authorities cited by appellant have no bearing upon the point sought to be presented by him.

[2] The question of innocent purchaser does not arise in this case. Appellant obtained a deed from a person who had no interest in the land, and made no claim to it at any time; therefore he cannot be protected from

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the effect of evidence tending to show that Diana Singleton held the lot in question in trust for Martin Milholland.

[3] If, as all the testimony tends to show, even that of Mary Williams, appellant's vendor, the land was bought by Milholland and was conveyed to Diana Singleton in trust for him, his deed to appellee conveyed the equitable title to the land. McKamey v. Thorp, 61 Tex. 648; Burns v. Ross, 71 Tex. 516, 9 S. W. 468; Baylor v. Hopf, 81 Tex. 637, 17 S. W. 230; Kempner v. Rosenthal, 81 Tex. 12, 16 S. W. 639.

The declarations of Milholland were made in the presence of Diana Singleton, at the time the deed was executed to her by Stumberg, and she agreed to them and made them her declarations, and the testimony was admissible as to such declarations, and when taken in connection with other circumstances were sufficient to show that the land was bought by Milholland, and that the deed was made to Diana Singleton in trust for him. Grace v. Hanks, 57 Tex. 14; Wagner v. Isensee, 11 Tex. Civ. App. 491, 33 S. W. 156; Muckelroy v. House, 21 Tex. Civ. App. 673, 52 S. W. 1039; Smalley v. Paine (Tex. Civ. App.) 130 S. W. 739; Abbotts Trial Ev. p. 199; Spaulding v. Hallenbeck, 35 N. Y. 204; Terry v. Rodahan, 79 Ga. 278, 5 S. E. 38, 11 Am. St. Rep. 420.

[4] The document, objected to through the second assignment of error, in which Diana Singleton admitted that she held the land in trust for Martin Milholland, was admissible although not acknowledged as required by law. It was an admission on her part as to the title, and was competent for the purpose of showing an admission. It did not purport to convey anything. French v. Strumberg, 52 Tex. 92. Had the document been rejected, it would not have mattered, as the whole of the evidence tended to show that the equitable title to the land was in Martin Milholland when he conveyed the land to appellee. Appellant failed to show any title whatever to the land.

The third assignment of error complains of the answer of Nancy Jones and Jim Jones being stricken out. The statement under the assignment fails to show who Nancy and Jim Jones are, what answer they filed, or what action was taken by the court on such answer. No reference is made to any exception being taken by any one to the action of the court, if there was any such action taken.

[5] The evidence showing clearly that the equitable title to the land was in Milholland, and that Diana's children did not have any interest in the land, nor could have, the court did not err in refusing to grant a continuance to appellant that they might be made parties to the suit. Appellant could have gained nothing by the continuance, because he did not claim through them, and had not

even the shadow of a claim of any kind to the land. Tapp v. Corey, 64 Tex. 594.

The evidence of Mary Williams showed that she knew nothing about Diana Singleton paying anything on the land. She swore that she did not know who paid for it, and testified that Milholland made the last payment on the land. Her testimony amounted to nothing so far as it related to payments made by Diana; but she swore to facts showing that the land was conveyed to Diana to protect Milholland from his wife. Milholland testified, "I made all the payments on said lot and paid off the note to Mr. Geo. R. Stumberg, Jr." Stumberg swore positively that Milholland made all the payments on the land, and that testimony was not contradicted. There was nothing to go before a jury.

[6] The evidence of Milholland that he made all the payments on the land was admissible. His testimony may have been self-serving; but, if that disqualified him, no man would be permitted to testify in his own behalf. We know of no law disqualifying a witness on the ground that his testimony might serve his own interest. A cestui que trust cannot give his declarations in evidence to establish a trust, but, unless disqualified on some other ground, he can testify to the facts like any other witness. Perry on Trusts, § 77. Independent of his testimony, however, the evidence was ample to establish the trust.

All points raised by the different assignments of error have been considered, and, no merit being found in any of them, the judgment is affirmed.