## MURPHY et al. v. JOHNSON et al.

### No. 7705.

Court of Civil Appeals of Texas. Austin.

Oct. 19, 1932.

Rehearing Overruled Nov. 9, 1932.

Company, a Texas corporation, and Phillips Petroleum Company, an Oklahoma corporation, to recover an undivided one-half interest in two tracts of land, described in this appeal as tract No. 1 and tract No. 2. The petition contained three counts; the first being in the usual form of trespass to try title. The second count alleged:

That appellee, W. S. Johnson and his first wife, Esther Johnson, were the parents of appellants, Eliza Murphy and Martha Nichols. That during the marital relationship they accumulated certain community property, consisting, among other things, of live stock in Brown county, Tex.

That Esther Johnson died about the year 1879.

That, after her death as well as before, W. S. Johnson continued to handle such live stock and to pay for other stock with the proceeds of the former stock, and that he acquired title to tract No. 1 by the exchange of property belonging to and with the proceeds of the sale of a portion of the community estate of W. S. Johnson and his deceased wife, Esther Johnson, one-half of which belonged to appellants. That W. S. Johnson acquired the legal title to tract No. 1, known as the M. B. Nix 80-acre survey, in August, 1892, under the following facts:

That M. B. Nix had entered upon said land by virtue of the homestead laws of Texas, and thereafter his interest was assigned and transferred to J. W. Boliver. That prior to that time W. S. Johnson had taken up a preemption homestead of 160 acres, and was not eligible to acquire an additional pre-emption homestead. That W. S. Johnson negotiated with one I. H. Kinsey to purchase from Boliver the Nix survey, and turned over to Kinsey the sum of $20 and a sorrel horse, described by a certain brand, all of which was alleged to be community property of W. S. and Esther Johnson. That it was agreed that Boliver assign and transfer said Nix survey to Hugh Murphy, which was done, and that Hugh Murphy, after receiving the assignment and transfer from Boliver, entered upon the land and made final proof of occupancy and received the patent for said land; and thereafter, in accordance with the previous agreement, Hugh Murphy conveyed the land to W. S. Johnson, who had ever since held and used said land as his homestead until about January, 1928, when he moved from said land and became a resident of Concho county, Tex.

It was further alleged that, by virtue of these facts, a resulting trust was created in behalf of appellants, and that appellants were the beneficial or equitable owners of an undivided one-half interest in tract No. 1; that the land had never been partitioned, but had been occupied by the cotenant W. S. Johnson, and used by him continuously during the time

Edwin Mechem and T. B. Rapcoch, both of Las Cruces, N. M., and Del W. Harrington, of El Paso, for appellants.

Don Emery, of Amarillo, Walter L. Barnes, of Des Moines, Iowa, and T. L. Dyer, of Breckenridge, for appellee Phillips Petroleum Co.

H. S. Garrett and H. R. Wilson, both of Fort Worth, for appellee Texas Co.

Butts & Wright, of Cisco, for appellees Stanley, L. F., and S. F. Benckenstein, John M. and Albert Cotter Lewis, and Mary L. Easthope.

Scott W. Key, of Eastland, for appellee Humble Oil & Refining Co.

Wilkinson & Wilkinson, of Brownwood, for appellees W. S. Volley and Lela Johnson.

**BLAIR, J.**

The appellants, Eliza Murphy and Martha Nichols, each joined pro forma by her husband, sued appellees, W. S. Johnson, Volley Johnson and wife, Lela Johnson, Stanley Benckenstein, F. L. Benckenstein, S. P. Benckenstein, John M. Lewis, Albert Cotter Lewis, Mary L. Easthope, the Texas Company, a Texas corporation, the Texas Company, a Delaware corporation, Humble Oil & Refining

above mentioned; and that appellants at no time prior to the month of April, 1930, had any notice or knowledge that the said W. S. Johnson, or any one claiming under him, was claiming the land adversely to appellants. The petition further alleged with respect to tract No. 1 that in January, 1926, appellees W. S. Johnson and his son by a second marriage, Volley Johnson, and the latter's wife, Lela Johnson, undertook to execute an oil and gas lease to appellee Texas Company, the Texas corporation, on said land; and that, as a result of drilling for oil thereon, petroleum oil and gas have been extracted therefrom of the value of $250,000, and that no part of which has ever been received by appellants, to their damage in the sum of $125,000. Appellants also alleged that oil royalties, one-half of which belonged to them, had been wrongfully paid to appellees, W. S. Johnson, Volley Johnson, Lela Johnson, and others, and prayed for an accounting against them and the two appellees Texas Company corporations.

With respect to tract No. 2, and in addition to the facts alleged showing the relationship of appellee W. S. Johnson to appellants, they further alleged as follows:

"That about the year 1901 the defendant W. S. Johnson purchased from the State of Texas with money derived from the sale of the community estate of W. S. Johnson and Esther Johnson, fully described in paragraph 1, the tract of land described as Tract No. 2, and by reason thereof these plaintiffs were and are the owners of an undivided one-half interest in and to said tract of land. That the said W. S. Johnson after purchasing said land from the State of Texas, held the same for himself and for these plaintiffs and as a cotenant with these plaintiffs and that at all times held out and represented to these plaintiffs that their interest in said land was being held by him for them, and that he would at all times save and protect them in the enjoyment of same, and plaintiffs had no notice or knowledge that said land was being held by the said W. S. Johnson adversely to them until about the month of April 1930."

"Plaintiffs further show to the court that on or about the 19th day of January, 1926, by an instrument of that date, the defendants, W. S. Johnson, Volley Johnson and wife, Lela Johnson, unlawfully attempted to sell and convey to the defendant Humble Oil & Refining Company, an oil and gas leasehold on Tract No. 2. That by virtue of said lease the said defendant still claims and holds said leasehold interest, and beginning about the year 1928 drilled wells for oil and gas upon said tract of land, and has extracted and produced from said land petroleum oil and gas, as the plaintiffs believe and here now allege of the value of $250,000.00, no part of which has ever been received by the plaintiffs, and withhold all of same from the plaintiffs, to their damage in the sum of $125,000."

By the third count in their petition, appellants alleged that appellee W. S. Johnson, at each and all of the dates of the execution of the oil and gas lease contracts and of the conveyance of royalty interest in the oil and gas production from both tracts of said lands, was non compos mentis, and was so deficient in his mentality, and was so lacking in his discretion and ability to know and realize the consequences of his acts as to be totally and completely incapacitated mentally from transacting any business; and that by reason thereof said pretended leases and sales of royalty were and are void; and that, since the execution thereof, the said W. S. Johnson has never regained his mental capacity so as to be able to ratify the same; and they pray for cancellation of each and all of the gas leases and conveyances of royalty, and for general and special relief.

The other appellees named were alleged to be claiming some interest in and to the said two tracts of land and the mineral rights therein under some character of conveyance either from the appellees Johnson, the Texas Companies, or the Humble Oil & Refining Company; the exact extent and nature of their interest was alleged not to be known to appellants.

Appellants nowhere allege that appellees oil companies had notice of their alleged claim in the two tracts of land by virtue of their alleged resulting trust.

As we interpret the petition and according to the briefs of appellants, their cause of action against the Texas Company for the recovery of an undivided one-half interest in tract No. 1 was based upon an alleged resulting trust, which arose because their father, W. S. Johnson, purchased said lands with community funds or property of himself and their deceased mother, Esther Johnson, one-half of which was inherited by and belonged to appellants; that, while W. S. Johnson took the legal title to the lands in his own name, a resulting trust was under the facts and circumstances created in behalf of appellants with their father, W. S. Johnson, as trustee and with appellants as the cestui que trust; and that appellants were therefore entitled to recover against the Texas Company, a subsequent grantee of W. S. Johnson of an oil and gas leasehold estate, an undivided one-half interest in the lands and damages thereto in virtue of the premises alleged.

It is also apparent that the petition affirmatively alleged the specific facts under which W. S. Johnson acquired the legal title to tract No. 1 to be, in substance, that, after W. S. Johnson had already acquired from the state of Texas 160 acres of land, being all he was entitled to receive under the Pre-emption Homestead Laws, he nevertheless made an arrangement with another person to settle on tract No. 1 and to acquire a pre-emption homestead therein and to obtain a patent from the

state of Texas, and then deed the land to Johnson; that all of this was done in accordance with the agreement; and that Johnson paid such person to carry out the agreement with money or property, one-half of which belonged to appellants.

To this petition the Texas Company presented, and the trial court sustained, certain special exceptions to the effect that, since it affirmatively appeared from the facts alleged that appellants were attempting to found their cause of action upon acts which constituted a violation of the law and upon acts contrary to the spirit and intendment of the law and inimical to public policy with regard to the Homestead Pre-emption Law of Texas, no resulting trust could spring from such acts in favor of appellants; and, upon their refusal to amend, the suit against the Texas Company was dismissed.

■ In construing article 14, § 6, of the Constitution, and the various statutes in aid thereof, relating to the right to acquire a pre-emption homestead, the courts have uniformly held that "the evident purpose and policy of our pre-emption laws is to induce immigration, afford homes to the actual settler, and thereby cause the settlement and improvement of the country. They were not intended, however, to give homes to those who already had them, of their own, in the state, and to permit these owners to acquire pre-emption titles through occupancy by tenants." Gambrell v. Steele, 55 Tex. 582. See, also, Garrison v. Grant, 57 Tex. 602.

In Daughty v. Hall, 59 Tex. 518, it is held that one who had already acquired a homestead could not purchase the homestead right of another person who had settled on the land, because such transactions would permit one to obtain in an indirect manner additional lands under the Homestead Laws in violation of their express terms and purposes. And particularly do the courts hold that such acts would contravene the statutes (articles 3939, 3940, R. S. 1879, as brought forward in later revisions), which require that an applicant for a pre-emption homestead must make affidavit that he has been in actual possession for the period of time required by law, and "that he is without any homestead of his own." Burleson v. Durham, 46 Tex. 152, 160; Turner v. Ferguson, 58 Tex. 6, 10; Busk v. Lowrie, 86 Tex. 128, 23 S. W. 983.

■■ We have reached the conclusion that, since appellants' petition affirmatively alleged that their father acquired the legal title to tract No. 1, patented as state homestead land, by having another person occupy it for him contrary to and in violation of the Homestead Laws, and by contracting for the perjury of such person with design to thwart and inimical with the public policy of the state in the Homestead Laws, and since the petition further affirmatively alleged that the resulting trust sought to be established in said land had its foundation in such illegal and fraudulent acts, no such trust was created; because of the well-settled rule that "no resulting trust can spring from an act contrary to public policy or statute." The rule is founded upon honesty and fair dealing, and courts of equity do not permit the parties to such transactions to reap any benefit therefrom. Nor do the courts permit the children of a father guilty of such acts and transactions to disclose the shame of their ancestor, although the children did not participate in the illegal or fraudulent acts and had no knowledge of them. In the case of Eastham v. Roundtree, 56 Tex. 110, where a father in failing circumstances, with a view to secreting his property from creditors, purchased certain land, taking the title in the name of a third person with his consent, and on the trust that he would hold a one-half interest as an advancement for the child of purchaser, it was held that, the title having vested in the third party, a court of equity would not divest it to enforce the trust, either at the suit of the father or at the suit of the child, though the child did not participate in the fraud and had no knowledge of it. The reason for the rule that the deed would have to stand as between the father and the trustee was, "not only because the statute makes such illegal acts binding between the parties, but for the further reason that the courts would not interfere to relieve a party from his own fraud"; and the reason for the rule as between the child and the trustee was held to be as follows:

"If one-half of the purchase money was paid by the father under such circumstances as made such investment for the benefit of the intervenor fraudulent as to his creditors, then it is certainly true that all the claim she has is based upon a transaction illegal, because made to hinder, delay and defraud creditors, and from which no resulting trust can spring in her favor, although she may not have participated in the fraud and may not have had any knowledge thereof; for in such case she appears as the intended donee of her father, through a transaction forbidden by law.

"To permit a man's children to recover property which he had fraudulently placed in the name of another for the purpose of placing it beyond the reach of his creditors, upon the ground that it was intended for their benefit, would be to contravene a well-settled public policy, and to offer a premium to dishonesty. It is a universal rule that no one can claim a right through the fraud of himself or another. Ex turpi causa non oritur actio. No resulting trust can spring from an act contrary to public policy or a statute. Perry on Trusts, 131; 1 Leading Cases in Equity, 320, 343."

In Rogers v. Blackshear, 60 Tex. Civ. App. 576, 128 S. W. 938, where plaintiff, who attempted to obtain a patent to state homestead land by having another person to occupy it for him contrary to law, sought to establish

an equitable interest in the land against the patentee of the fraudulent agreement, and against purchasers from him with notice of such prior sale to plaintiff, it was held that the court would not enforce plaintiff's equitable interest, because of the alleged attempt to obtain the patent contrary to law; the court simply leaving all the parties where their unlawful acts placed them. So all the decisions run, that "no resulting trust could be raised through an act forbidden by law," and "that to raise such trust the transaction must be honest." Murphy v. Hubert, 16 Pa. (4 Harris) 50, 56; Anderson v. Carkins, 135 U. S. 483, 10 S. Ct. 905, 34 L. Ed. 272; Sell v. West, 125 Mo. 621, 28 S. W. 969, 46 Am. St. Rep. 508; Robinson v. Jones, 31 Neb. 20, 47 N. W. 480, where it is held that one party could not enter upon land under the pre-emption laws for the use and benefit or in trust for another, because the law intended it "for the exclusive use and benefit of the pre-emptor."

The sustaining of these special exceptions struck out of the petition the entire basis of appellants' cause of action against the Texas Company for the recovery of any interest in tract No. 1; and, since the appellants did not or could not amend, the trial court correctly dismissed the cause. Likewise, and for the same reasons, the trial court sustained these special exceptions as to the suits of appellants against all appellees claiming any right, title, or interest in tract No. 1, either as assignees or transferees of the Texas Company, or of appellees Johnson of royalty interests. The exceptions were also correctly sustained as to appellants' suit against their father, as trustee, to establish the alleged resulting trust; because to permit them to recover against their father in that capacity would permit them to recover the benefits of transactions forbidden by law and fair dealing, and would permit them to disclose the shame of their ancestor in that regard, which, even if true, as stated in the Texas Company's brief, "it were better that they walk backward, with averted gaze, and hide the shame."

Other special exceptions of the Texas Company were correctly sustained by the trial court. They were also adopted, presented, and sustained as to appellants' suit against appellee Humble Oil & Refining Company for the recovery of an undivided one-half interest in tract No. 2, containing 82 acres of land. Since these exceptions were applicable on principle and the facts alleged to both suits alike, and in order to avoid a repetition of the discussion of them, we pass to a consideration of them in connection with the latter suit.

Briefly, the petition sought a recovery of an undivided one-half interest in tract No. 2 as against appellee Humble Oil & Refining Company upon the theory that, since appellants' father acquired the legal title thereto in 1901, with funds or property of the community estate of himself and deceased wife, one-half of which belonged to appellants, a resulting trust was thereby created in the land, which interest the father had continually recognized until April, 1930, when appellants first learned of his adverse claim. In addition, appellants alleged the mental incapacity of their father to execute the oil and gas lease to appellee Humble Oil & Refining Company in 1926, and continuously thereafter to ratify same. The petition did not allege notice to any of the appellees of appellants' alleged resulting trust.

■ To this petition the appellee Humble Oil & Refining Company addressed, and the trial court sustained, a special exception to the effect that, since the petition specifically alleged the legal title to be in their father, and that this appellee purchased the oil and gas leasehold estate from him, it was necessary, in order to establish a resulting trust against appellee as such purchaser of the oil and gas lease, to both allege and prove that it had notice of the alleged equitable claim of the resulting trust; and especially so in view of the special exception directing attention to the matter.

Appellants plead only an equitable interest in the lands, specifically pleading how such interest arose. In so doing they also affirmatively pleaded that the legal title was taken in the name of their father and had continuously remained in his name; and that, as owner of the legal title he had conveyed the oil and gas leasehold estate to appellee. In view of these specific pleadings, it was the further duty of appellants to both plead and prove notice of their resulting trust claim to appellee; because, having pleaded the legal title in appellee, it was incumbent upon appellants to plead and prove such facts as would defeat appellee's legal title, which was alleged to be of record.

In 3 Pom. Eq. Juris. (4th Ed.) § 1043, the general rule is stated to be that while the interest of the cestui que trust in a resulting trust "is valid, and may be enforced not only against the trustee, but against his heirs, devisees, personal representatives, and all others who derive title from him as volunteers or purchasers with notice; but, being a purely equitable interest, it is cut off and destroyed as against all bona fide purchasers or mortgagees from the trustee for a valuable consideration and without notice."

In the application of this rule we think our courts, as well as courts of other jurisdictions, have uniformly held in effect that, where one seeks to establish an equitable or beneficial interest or resulting trust in lands, and alleges the legal record title to be in a third person, not connected with the trust, a court of equity will dismiss the bill or suit on proper exception to the pleadings for not affirmatively alleging that such third person had notice of the equitable interest or trust,

or had notice of sufficient facts or circumstances as would put him on inquiry as to such equitable interest or trust. Hennessy v. Blair, 107 Tex. 39, 173 S. W. 871, Ann. Cas. 1918C, 474; Cole v. Thompson (C. C.) 169 F. 729; Arrowood v. Blount (Tex. Sup.) 41 S.W.(2d) 412; Wimberly v. Pabst, 55 Tex. 587; Leonard v. Benfford Lbr. Co., 110 Tex. 83, 216 S. W. 382; Simpson v. Chapman, 45 Tex. 560; Durst v. Daugherty, 81 Tex. 650, 17 S. W. 388; Brown v. Henderson (Tex. Civ. App.) 31 S. W. 315; Bogart v. Moody, 35 Tex. Civ. App. 1, 79 S. W. 633; Elliott v. Wallace (Tex. Civ. App.) 42 S.W.(2d) 1058; Lyster v. Leighton, 36 Tex. Civ. App. 62, 81 S. W. 1033; Mangum v. White, 16 Tex. Civ. App. 254, 41 S. W. 80; Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Laffare v. Knight (Tex. Civ. App.) 101 S. W. 1034; Fordtran v. Perry (Tex. Civ. App.) 60 S. W. 1000, 1002; 39 Cyc. 618, 619 and 620; Wethered's Adm'r v. Boon, 17 Tex. 143, 146; Hill v. Moore, 62 Tex. 610; Teagarden v. R. B. Godley Lbr. Co., 105 Tex. 616, 154 S. W. 973; Duckworth v. Collie (Tex. Civ. App.) 235 S. W. 924; Sperry v. Moody (Tex. Civ. App.) 269 S. W. 272; Herrington v. Ayres (Tex. Civ. App.) 16 S.W.(2d) 886; Le Blanc v. Jackson (Tex. Civ. App.) 161 S. W. 60; 39 Cyc. 1778, note 79, and page 1648, note 15.

It is stated in their brief that "appellants do not allege that appellees had notice of their interest in the land. Bona fide purchaser is defensive matter and must be plead and proved." This is the general rule where a person is seeking to establish his legal title; but the rule is not applicable in this case where appellants specifically alleged the legal title to be vested in appellees; and that they were seeking to engraft on such legal title only an equitable or superior beneficial title in themselves. Having thus alleged the legal title to be vested in appellees, the petition disclosed on its face that appellants had no cause of action against appellees, absent further averment that appellees had notice of their equitable interest or trust; or had notice of such facts or circumstances as would put them upon inquiry as to such equitable interest or trust. Such is the rule announced in the last above cited authorities.

▓▓ All of the appellees presented, and the trial court sustained, special exceptions to the effect that it appeared from the allegations of appellants' petition that, if they ever had any cause of action, the same was based upon and wholly founded upon certain alleged equitable rights and claims, of which appellees oil companies and their transferees or assignees were not alleged to have had any notice, the same accrued as to tract No. 1 more than thirty-five years, and as to tract No. 2 more than 30 years prior to the institution of this suit by appellants; and that such claim or demand or cause of action became and was stale, and appellants were precluded by their own unconscionable delay, neglect, and laches from asserting same. We are clear in the view that these exceptions were correctly sustained as to appellees oil companies and their transferees or assignees.

Briefly, it appears from allegations of the petition that Esther Johnson, mother of appellants, died in 1879, from which it may be inferred that appellants became 21 years of age before 1900; and this suit was filed August 27, 1930; that their father, W. S. Johnson, purchased tract No. 1 in August, 1892, with funds or property, one-half of which belonged to appellants; that he purchased tract No. 2 in 1901, with funds or property, one-half of which belonged to appellants; that W. S. Johnson took the legal title in his own name and used the land continuously after the respective purchase dates until January, 1928, as his homestead, when he abandoned it as such homestead; that W. S. Johnson and his son by a second marriage, Volley Johnson, and the latter's wife, Lela Johnson, executed an oil and gas lease to appellee, the Texas Company, a Texas corporation, in January, 1926, on tract No. 1, and also executed an oil and gas lease to the Humble Oil & Refining Company, in January, 1926, on tract No. 2; that "said oil companies" drilled for and obtained large quantities of oil and gas from the lands, amounting to $500,000 in value; and paid to appellees Johnson and other royalty owners one-eighth of such production, amounting to $100,000 in value; that at all times prior to April, 1930, W. S. Johnson had recognized appellants' interest in the land, and told them that he would "save and protect their interest"; that, at the time W. S. Johnson executed the oil and gas leases in 1926, he was non compos mentis, and continued so to the date of suit.

The attempt of appellants to excuse their laches and negligent delay in bringing this suit, partly upon the allegations that their father was non compos mentis when he executed the oil and gas leases in January, 1926, and has remained so continuously until the filing of this suit in August, 1930, rather accentuated their laches and negligent delay in the premises. It is not alleged that appellees oil companies or their assignees knew of the mental incapacity of W. S. Johnson, or of the alleged resulting trust in the lands in favor of appellants; and it was therefore the duty of appellants to remove W. S. Johnson as trustee of the alleged resulting trust immediately upon the discovery of his alleged mental incapacity and his attempted sale of the trust property, which facts appellants alleged they knew more than four years prior to the filing of this suit. Appellants' laches or delay was further distinctly marked or made prominent by their allegations that in 1928, two years before the institution of this suit, the "said oil companies" began prospecting the premises for oil and gas and produced large quantities of same and paid to

other appellees holding legal title and assignments under the leases large sums of money. Equity will not permit appellants to sit by and see these large expenditures for the development of the lands, and payments for the oil and gas produced, withholding at all times any notice of their alleged equitable interest in the lands. And especially should this be the rule as to the question of the mental incapacity of W. S. Johnson to execute the leases, because it is the settled law in Texas that the leases he executed while insane, or a non compos mentis, are not void, but only voidable at the option or suit of appellants. Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115; Vogel v. Zuercher (Tex. Civ. App.) 135 S. W. 737; Pearson v. Cox, 71 Tex. 246, 9 S. W. 124, 10 Am. St. Rep. 740; Porter v. Brooks (Tex. Civ. App.) 159 S. W. 192; Elston v. Jasper, 45 Tex. 409.

■ The rule by which laches and negligent delay in bringing a suit is measured is largely determined by the exigencies of the situation of the parties and the nature and character of the property furnishing the subject-matter of the suit. It is a matter of common knowledge, which courts have universally recognized, that in dealing with oil and gas property it requires large expenditure of money to discover and reduce same to possession. Such property is also fugitive in its nature and subject to drainage under the laws of gravity, and also to great fluctuation in its value. Or, as was said in the case of Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 592, 23 L. Ed. 328:

"The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for a thousand dollars as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.

"While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of any thing known as property, requires prompt action in all who hold an option, whether they will share its risks, or stand clear of them."

■ And, in the language of the courts, the principle of laches is applied with greater force when the matter relates to oil and gas property and to minerals—the substance of which is fugacious, and the diligence required is measured by months rather than years, each case depending on its own particular facts and circumstances. Patterson v. Hewitt, 195 U. S. 309, 25 S. Ct. 35, 49 L. Ed. 214; Atlantic Life Ins. Co. v. Rowland (C. C. A.) 22 F.(2d) 126; Dexter & Carpenter v. Houston (C. C. A.) 20 F.(2d) 647; Galliher v. Cadwell, 145 U. S. 368, 12 S. Ct. 873, 36 L. Ed. 738; General Electric Co. v. Yost Electric Mfg. Co. (D. C.) 208 F. 719; Henry et al. v. United States (C. C. A.) 46 F.(2d) 640; Minchew v. Morris (Tex. Civ. App.) 241 S. W. 215.

Appellants sat by and permitted the oil companies to expend large sums of money in developing and making the oil and gas property valuable; they therefore come clearly within the rule announced in the case of General Electric Co. v. Yost Electric Co., supra, to the effect that a comparatively short time may constitute laches when the conduct of the slothful is such as to induce others in good faith to expend money and take the risks of the enterprise.

■ Closely akin to the foregoing equitable rule is the rule that "as between two innocent persons one of whom must suffer the consequence of a breach of trust the one who made it possible by his act of confidence must bear the loss." Eliason v. Wilborn, 281 U. S. 457, 50 S. Ct. 382, 383, 74 L. Ed. 962. Manifestly appellants occupy the position of the one who trusted most under the allegations of their petition that they trusted their father for more than 30 years to hold the title to and deal with the land as his own, and in permitting others relying in good faith upon such legal title to expend large sums of money in developing and making valuable the property sued for.

■ We have reached the conclusion, however, that the special exceptions of laches and stale demand should not have been sustained as to appellants' suit against W. S. Johnson, Volley Johnson, and Lela Johnson, for the recovery of an undivided one-half interest in tract No. 2 under their alleged resulting trust theory.

The law is well settled that no limitation, laches, or stale demand will run in favor of a trustee against his beneficiary until the trust has been clearly and unequivocally repudiated, and notice of such repudiation is brought to the beneficiary or cestui que trust. Alexander v. Kennedy, 19 Tex. 488, 70 Am. Dec. 358; Burney v. Burney (Tex. Civ. App.) 261 S. W. 182, 185; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 89, and Pearce v. Dyess, 45 Tex. Civ. App. 406, 101 S. W. 549, 550, where the litigation to establish a resulting trust arose upon facts and circumstances very similar to the facts alleged in this case. That is, appellants alleged that, after the death of their mother, their father continued to manage and control the community estate, consist-

ing of live stock which he sold from time to time and purchased other live stock with the proceeds; that he purchased tract No. 2 in 1901 with the proceeds or funds of the community estate, one-half of which belonged to appellants; that he continued to live on the property as his home until 1928, and that he at all times recognized appellants' interest in the land; and that at all times told them that their interest in the land was being held by him for them, and that he would at all times save and protect them in same; and that they had no notice of any adverse claim of their father until April, 1930, before they brought this suit in August, 1930. These facts show the fiduciary relation of W. S. Johnson to appellants and his continued management of the community estate as a proper inducement for the continuation of that fiduciary relation; that their father used the land as his homestead until 1928; and that he at all times recognized and told them he would protect and save their interest in the land until April, 1930. Under very similar facts, a resulting trust was held not barred by laches after a period of 30 years by this court in Pearce v. Dyess, supra, the court holding as follows: "We think the petition sufficiently alleged a resulting trust in the lands in favor of appellees. Where property is purchased and the conveyance of the legal title is taken in the name of one person, while the purchase price is paid by another person, a trust at once results in favor of the person who paid the price or whose funds were used in the payment thereof. Burns v. Ross, 71 Tex. 516, 9 S. W. 468; Eastham v. Roundtree, 56 Tex. 110, 112; Worst v. Sgitcovich [Tex. Civ. App.] 46 S. W. 72; Caldwell v. Bryan's Ex'r, 20 Tex. Civ. App. 168, 49 S. W. 240; 2 Pom. Eq. Jur. § 1037. And the petition of appellees alleged facts showing a recognition of such trust by the trustee up to the date of his death, and by appellants thereafter up to a date the interval between which and the filing of this suit was too short to base any statutory period of limitation upon. It is well settled by authority that limitation, laches, or stale demand cannot be urged against the enforcement of a resulting trust until such trust has been repudiated. Wilson v. Simpson, 80 Tex. 287, 16 S. W. 40; Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Rucker v. Dailey, 66 Tex. 284, 1 S. W. 316."

In view of our action reversing for trial, if desired, appellants' suit against the appellees Johnson for the recovery of an equitable interest in tract No. 2, the trial court will be required to adjust the equities between the parties, favoring the Humble Oil & Refining Company and its assignees to the extent of the amounts of oil and gas received by them prior to notice of appellants' claim of interest, and such other equities as may appear from the evidence, in accordance with the rule announced in Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Fox v. Robbins (Tex. Civ. App.) 62 S. W. 815.

We do not sustain appellants' contention that the effect of sustaining all of the appellees' special exceptions was merely to strip the pleadings of every material allegation in the second and third counts, leaving the formal action in trespass to try title contained in the first count unimpaired, and that the court erred in dismissing the suit without a trial of the formal action in trespass to try title.

It is clear that the second and third counts specifically alleged the facts under which appellants claimed title to the land, showing the origin and steps by which they sought to recover an undivided one-half interest in the land under a theory of resulting trust.

In Gatewood v. Graves (Tex. Civ. App.) 241 S. W. 264, 265, it was held that, "where, in trespass to try title, plaintiff alleges generally his ownership of the land but proceeds to set out the facts constituting his title, he is limited to such facts in order to establish his title, and cannot rely on his formal plea of trespass to try title."

In Snyder v. Nunn, 66 Tex. 255, 18 S. W. 340, 341, the court held that: "It is true that a general allegation of ownership in the plaintiff is sufficient in a petition for the recovery of land; but, if the plaintiff goes further, and sets up his title, and his allegations show that it is not a good one, a general demurrer to the petition should be sustained. Hughes v. Lane, 6 Tex. 289, 294."

Such has been the uniform holdings of our courts. National Lumber & Creosoting Co. v. Maris (Tex. Civ. App.) 151 S. W. 325; Herndon v. Hayter (Tex. Civ. App.) 28 S.W.(2d) 885.

The judgment of the trial court will be affirmed in part, and in part reversed and remanded in accordance with this opinion.

Affirmed in part, and in part reversed and remanded.